## Hunn, Appellant, v. Pennsylvania Institution for the Instruction of the Blind.

*Contract—Building contract—Performance—Time—Forfeiture—Allegata and probata—Architect.*

Where a building contract provides for a penalty in case of noncompletion within the time specified, and also contemplates final completion by the owners in certain contingencies with the settlement with the contractors after such completion, an averment of complete performance by the contractors is, in so far as the construction of the building is involved, sustained by proof which shows that the contractors performed a large part of the work, and that the building was finally completed by the owners in accordance with the contract, although not within the time specified. In such a case when the owners completed the building, the day of final settlement had arrived, subject, of course, to the respective rights of the contracting parties as defined by the contract.

The law recognizes the right of parties to a contract to stipulate the method of arbitrating questions that may arise between them in the performance of mutual covenants, but no such right exists in the absence of an express covenant, and he who asserts it has the burden of establishing its existence.

The usual arbitration clauses in building contracts refer to questions arising between the contractors and owners, and not questions that concern the performance of duties by the architects themselves. Such clauses are in derogation of the common-law right of trial by jury, and are not to be extended beyond the express covenants of the contracting parties.

An arbitration clause, such as is usually inserted in a building contract, is not to be construed as showing an intention of the parties to deliberately enter into a covenant providing that the arbiters should have the right to pass upon and finally determine questions involving their own failure in the performance of duties.

Where, under the terms of a building contract, the owners after part performance by the contractors, have taken possession of the building and completed it, it is not absolutely necessary for the contractors in a suit to recover the balance alleged to be due them to produce a certificate from the architects that the building had been properly completed. The certificate was intended as a protection to the owners, and they may waive their right in this respect, and the question whether they have waived their right is for the jury.

Argued March 31, 1908. Appeal, No. 91, Jan. T., 1908, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1900, No. 1,139, on verdict for defendant in case of E. Hunn, Jr., Assignee for the benefit of creditors of J. Watts Mercur and Ulysses Mercur, late trading as J. W. Mercur & Company, v. The Pennsylvania Institution for the Instruction of the Blind. Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit to recover money alleged to be due on a building contract. Before BRÉGY, P. J.

At the trial it appeared that J. Watts Mercur and Ulysses Mercur, trading as J. W. Mercur & Co., were contractors for the erection of a building for the Pennsylvania Institution for the Instruction of the Blind.

The contract contained, inter alia, the following provisions:

"Should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on their part herein contained, such refusal, neglect or failure being certified by the architects, the owners shall be at liberty, after three days' written notice to the contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractors under this contract, and if the architects shall certify that such refusal, neglect or

failure is sufficient ground for such action, the owners shall also be at liberty to determine the employment of the contractors for the said work, and to enter upon the premises and take possession of all materials thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor ; and in case of such discontinuance of the employment of the contractors they shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owners in finishing the work, such excess shall be paid by the owners to the contractors, but if such expense shall exceed such unpaid balance the contractors shall pay the difference to the owners. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificates thereof shall be conclusive upon the parties as respects the amount due by either of them."

At the trial the plaintiff made the following offer :

We offer to prove by this witness the completion of the contract, admitting that the building was not turned over until 153 days after the time fixed by the contract. But also propose to prove by this witness that, although the contract was dated June 30, 1897, the contractors were unable to proceed without the plans for the work, which were with the architects and retained by them. That though they then requested the furnishing of these plans, the architects did not furnish them until about August 1, 1897 ; that by reason of the failure of the architects on demand to furnish the plans, they were delayed in the progress of their work to that extent, and that, therefore, to that extent of time the noncompletion of the building is one for which they are not responsible.

We also offer to prove by the witness that the original estimates for the work contemplated by the defendant were too high for the means the defendant had at hand to pay for them ; that action was taken on the part of the defendant requiring the architects to cut down the estimates and

to revise the plans, and that by reason of the delay which the architects made in arranging for the alterations in the plans the work was delayed to the extent of a considerable number of days, which will be detailed in the testimony.

We also offer to show by the witness that the plans of the architects upon which the work was built, and the drawings, rested the beams on the center walls at an improper point over the cellar arches, that in consequence of this imperfection in the plan after the beams had been put in proper position under the plan, they broke the arches down. That by reason of this a very considerable delay was occasioned to the contractors in the completion of their work. The amount of this delay was upwards of about one month.

We also propose to prove that the architects required, in accordance with the plans, certain alterations and work to be done in accordance with these alterations. That the witness demanded compensation for the extra work and an allowance of time, that the architects allowed the compensation for the work but did not pass upon or determine the question of an allowance of time. That this required and consumed extra time to the extent of many weeks, the amount of which the witness will state.

We will also show that certain roofing tiles were to be furnished in accordance with the plans. That those roofing tiles were submitted to the architect in accordance with the plans, but that he determined to change the sort of tiles but did not determine what new kinds of tiles he would supply for upwards of a month, and that in consequence of that delay the work was delayed and a delay in completion to the extent of a month or upwards thereby arose.

We offer in connection with that to prove that the work was finally accepted and completed, but with this delay in completion, and has ever since been in the occupancy of the owner.

The alterations referred to were by written direction of the architects named in the contract.

In connection with this offer Mr. Johnson admits that owing to the bankruptcy of the Mercurs before the final completion, the defendant took possession of the premises, finished the work and charged the plaintiffs with the amount which they allowed credit for, of the cost of such finishing. There-

fore, Mr. Johnson says that while the statement of claim appears to be for about $61,000, the real claim is practically but $300 or $400 more than $15,300, the amount charged by the defendant against the plaintiff for delay; that there were other payments made out of the funds for completion with our consent and that those payments are allowed, reducing the claim that is nominally made of about $61,000 by virtue of these deductions to practically a claim only for substantially the amount that has been retained for delay in completion.

There were quite a number of liens filed and they were all settled up and the building was finally accepted when completed in the way stated by the owners, and the outlays for such work will be credited against the amount claimed here.

This is a claim, in the first place, that the alterations did not delay the other work, but that they required an amount of time to complete those alterations; it is a claim, not that other contractors delayed the work or that there was an abandonment by the employees or destruction by fire; it is a claim that the architects did not furnish the plan; it is a claim that the architects altered the plan so that it required, in order to take up the work, the waiting until they determined upon it; they altered the designs with regard to the tiles so that until we got those alterations we could not go on. Those are the delays of the agent of the owner so made in the contract and not of an independent contractor.

Objected to. Objection sustained. Exception. [1]

The court charged as follows:

I have sustained, as you have heard, the objection made to certain testimony that was offered. Counsel for the plaintiff announces that he has no further testimony to offer. Therefore, the case goes to you without any testimony and you will have to find for the defendant. Of course, you could not find for the plaintiff as he has offered no testimony. You will render a verdict, therefore, for the defendant. [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; and (2) the charge, quoting it.

*John G. Johnson*, for appellant, cited: Rowe v. Gerry, 98 N. Y. Supp. 380; M'Combs v. M'Kenna, 2 W. & S. 216; Phillips & Const. Co. v. Seymour, 91 U. S. 646.

*Abraham M. Beitler*, with him *H. Gordon McCouch*, for appellee, cited: Stewart v. Kelly, 16 Pa. 160; Diehl v. Adams County Mut. Ins. Co., 58 Pa. 443; Wilkinson Mfg. Co. v. Welde, 196 Pa. 508; Clark v. A. Garrison Foundry Co., 219 Pa. 426; Monongahela Navigation Co. v. Fenlon, 4 W. & S. 205; Reynolds v. Caldwell, 51 Pa. 298; Payne v. Roberts, 214 Pa. 568.

OPINION BY MR. JUSTICE ELKIN, May 18, 1908:

The plaintiff brought an action of assumpsit to recover an alleged balance due on a building contract and in his statement of claim averred performance. The defendant entered a plea of non assumpsit, payment and set-off, to which plaintiff replied non solvit, no set-off and issue. When the case came on for trial the plaintiff offered in evidence the contract, plans and specifications, and then produced as a witness J. W. Mercur, a member of the contracting firm. Counsel being asked what he intended to prove by this witness, placed on record an elaborate offer covering the purpose of the testimony to be given. Counsel for defendant objected on the ground that the contract between the parties showed that final payment was not to be made until the architects had certified that the work had been completed in accordance with the plans and specifications, and it was not proposed to show that the architects had passed upon questions in dispute between the parties, and for the further reason that complete performance having been averred, proof which shows nonperformance or part performance, is not sufficient to sustain the allegata, which objection was sustained by the court.

No further testimony was offered and the learned trial judge directed the jury to return a verdict for defendant. This appeal raises the question whether the proof offered, but rejected, should have been admitted and, if so, was it sufficient to sustain the averments of the declaration. It is elementary that the probata must sustain the allegata, and of course one who avers performance and fails to prove it has no right to recover. In the present case, however, the contention is

not only that performance was averred, but that the proof offered showed performance within the meaning of the law. Whether the contention can prevail necessarily depends upon the facts. The suit was brought to recover the balance due for the construction of a completed building, and the facts show that the building was completed at the time the action was commenced. The performance averred and necessary to be proven was the completion of the building, not the completion within the time fixed in the contract. Failure to complete within the specified time did not forfeit the right to recover, if completed at a later date, but subjected the contractors who might be in default in this respect to the payment of a certain sum for each day of delay as liquidated damages. It was not necessary either to aver or prove completion on August 1, 1898, in order to recover such balance as might be justly due under the contract. Time is not of the essence of the contract in question in the sense that failure to complete within a fixed period forfeits the right to recover for work already done at the date fixed for completion, or yet to be done at that time. The contract provides, not a forfeiture of the right to recover, upon failure to complete on a certain date, but for liquidated damages to be deducted from the contract price. Nor, as we construe the contract, did the right to recover depend upon the completion of the building by the contractors themselves, because it is therein provided in clause eleven that upon the happening of certain contingencies the owners shall have the right to enter upon the premises, takes possession of materials, employ men and complete the building, which right was exercised in this case. The final payment of any balance due the contractors, in the event of the owners electing to complete, was to be held in abeyance until the building was thus completed, when upon settlement the owners were authorized to deduct from the balance due the contractors, the cost of completion, and such damages as may have resulted to the owners by the alleged default of the contractors. By the express covenants of the contract it clearly appears the parties had in contemplation, first, completion by the contractors, and, second, under certain circumstances part performance by the contractors, and final completion by the owners, and the right to recover such balance

as was justly due did not depend upon entire completion by the contractors, but upon completion, either by the contractors, or partly by the contractors and partly by the owners, and when completed in either way, final settlement was to be made in the manner provided. We, therefore, hold that the averment of complete performance in so far as the construction of the building is involved is sustained by proof which shows that the contractors performed a large part of the work and that the building was finally completed by the owners in accordance with the contract. When the owners completed the building the day of final settlement had arrived, subject, of course, to the respective rights of the contracting parties as defined by the contract. The contract itself pointed out the method of settlement, which was that the contractors were entitled to receive the total contract price for a completed building, with such allowance or deduction as should be made for alterations, less advances made from time to time, and in the event of the building being completed by the owners, then the cost of completion to be deducted, together with an allowance for such damage as may have resulted by delay or otherwise in completing according to contract. The contracting parties themselves provided an orderly and sensible method of making settlement, and we can see no reason why pleadings framed and proofs offered, in an action brought to determine the legal rights of the parties, which produce and sustain an issue by means of which an alleged balance claimed to be due may be ascertained in accordance with the terms of the contract, should be held insufficient.

Another and perhaps more important question to determine is that which relates to the failure of the offer to show that matters in dispute between the parties had been submitted to the architects, as required by the contract, or that the architects had certified proper completion. By the terms of the contract the architects were made the arbiters of questions that might arise between the parties, and it was their duty to certify when the building was finally completed, and it must be conceded that if the contract referred to the arbitration of the architects, the questions of fact involved in the rejected offer of testimony, or if the architects were made the sole arbiters of these questions, and they have not in point of fact done

so, the appellant would have no right to have a jury pass upon them. On the question of arbitration it may be stated that every matter included in the contract and referred to the architects must be determined by them. This is the rule of our cases, and while in some instances it would seem to be a harsh one, it is so firmly established that it must be accepted as settled law in this state. It is, however, in derogation of the common-law right of trial by jury and should not be unduly extended. As indicated in Payne v. Roberts, 214 Pa. 568, the arbitration clauses in such contracts refer to questions arising between the contractors and owners, and not to questions that concern the performance of duties by the architects themselves, and certainly the rule should not apply at all beyond the express covenants of the contracting parties. The law recognizes the right of parties to a contract to stipulate the method of arbitrating questions that may arise between them in the performance of mutual covenants, but no such right exists in the absence of an express covenant and he who asserts it has the burden of establishing its existence. If questions arise between the contracting parties not included in the arbitration clauses, or if the questions raised relate to failure or dereliction in the performance of duties by the architects themselves, the right to have these matters passed upon by a jury cannot be denied upon the ground of failure to arbitrate. Nearly all of the rejected offer of testimony relates to default in the performance of duties imposed upon the architects by the contract, and certainly it could not have been the intention of the parties to deliberately enter into a covenant providing that the arbiters should have the right to pass upon and finally determine questions involving their own failure in the performance of duties. At this stage of the case, it is perhaps only necessary to say that the arbitration clauses only refer to the questions therein specified, and do not relate to questions concerning the performance, or failure to perform, the professional duties of the architects. Nor do we agree that it is absolutely necessary for appellant to produce a certificate from the architects showing that the building had been properly completed before there can be a recovery under the circumstances of the present case. This covenant was intended as a protection to the owners, and if the building had

been completed by the contractors, they clearly had the right to insist upon it, but it is equally clear that the owners could waive their right in this respect. If they chose to accept the building as completed by themselves, took possession of and occupied it as a completed building, it ought at least to be for the jury to say whether they had not waived their right to insist upon the certificate of the architects showing final completion. Indeed, if the facts warrant it, and this we cannot now determine, it might be the duty of the court to say as a matter of law that the acceptance by the owners amounted to a waiver of this provision of the contract.

Judgment reversed and a venire facias de novo awarded.