D. A. DINNIE, Appellant, v. LAKOTA HOTEL CO., Respondent.

(186 N. W. 248.)

**Contracts — substantial compliance with building contract may occur through the action of both the contractor and the owner who has completed construction under the contract.**

1. Where a building contract provides that the owner may take possession and proceed to complete the contract, and where the owner did take possession of the construction and furnish labor and material pursuant to the contract, substantial compliance with the contract may occur through the action of both the contractor and the owner.

**Contracts — in contractor's action against owner, verdict held not to show, as matter of law, a failure to substantially perform.**

2. Where a jury found that the contractor had substantially performed the contract, and returned a verdict for the plaintiff less the cost of the labor and materials furnished by the owner and for other omissions and defects not exceeding $570.00; and where contract price for the construction was $28,800.00, it is *held* that the verdict as returned by the jury does not show as a matter of law failure to substantially perform.

Contracts — architect's refusal to issue final certificate does not preclude contractor's right of action.

3. Upon the circumstances of the record it is *held* that the failure of the architect to issue a final certificate did not preclude right of action by the contractor.

Opinion filed Dec. 13, 1921. Rehearing denied Jan. 3, 1922.

Action in District court, Nelson county. *Cooley,* J., upon a building contract: The plaintiff has appealed from a judgment notwithstanding the verdict.

Judgment reversed and verdict ordered re-instated.

*Bradford & Nash,* for appellant.

The question whether a contract has been substantially performed is generally one of fact. Pitcairn v. Philip Hiss Co. 51 C. C. A. 323, 113 Fed. 492; Elizabeth v. Fitzgerald, 52 C. C. A. 321, 114 Fed. 547; Fitzgerald v. LaPorte, 64 Ark. 34, 40 S. W. 261; West v. Sunda, 69 Conn. 60, 36 Atl. 1015; Bauer v. Hindley, 222 Ill. 319, 78 N. E. 626; E. T. Burrowes Co. v. Crittenden, (Miss.) 37 So. 504.

A substantial performance of a building contract is sufficient. Fish v. Stubbings, 65 Ill. 492; Elizabeth v. Fitzgerald, 52 C. C. A. 321, 114 Fed. 547; Concord Apartment House Co. v. O'Brien, 228 Ill. 360, 81 N. E. 1038; Ramstedt v. Brooker, 113 App. Div. 45, 98 N. Y. Supp. 1044; Hahn v. Bonacum, 76 Neb. 837, 107 N. W. 1001, 109 N. W. 368; Rush v. Wagner, 34 N. Y. S. R. 798, 12 N. Y. Supp. 2; Mecham v. Baker, 34 N. Y. S. R. 535, 11 N. Y. Supp. 781, Walstrom v. Oliver Watts Constr. Co. (Ala.) 50 So. 46.

In building contracts a literal compliance with the specifications is not necessary to recovery by the contractor. Keeler v. Herr, 157 Ill. 57, 41 N. E. 750; Dugue v. Levy, 114 La. 21, 37 So. 995; Block-Pollock Iron Co. v. Cincinnati Corrugating Iron Co. 10 Ohio S. & C.

P. Dec. 51; Heckman v. Pinkney, 81 N. Y. 211.

*Engerud, Divet, Holt & Frame,* for respondent.

"To entitle a contractor to recover on a building contract, which has not been fully complied with by him, under the doctrine of substantial performance, it must appear, not only that he endeavored to perform it in good faith, but also that he has done so, except as to unimportant omissions and deviations." Anderson & Hunter v. Todd, 8 N. D. 158; Marchand v. Perrin, 19 N. D. 794, 799; Braseth v. Bank, 12 N. D. 486; Elliott v. Caldwell (Minn.) 45 N. W. 845; Franklin v. Schulz, 57 Pac. 1037; Ashley v. Henehan, 47 N. E. 573; Manthey v. Stock, 113 N. W. 443; Gillespie Tool Co. v. Wilson, 16 Atl. 36; Marchant v. Hayes, 49 Pac. 840; Hennessey v. Preston, 106 N. E. 570; Bush v. Jones, 144 Fed. 942, (3 C. C. A.).

## Statement.

BRONSON, J. This is an action upon a building contract. In the trial court the jury returned a verdict for the plaintiff. Upon motion, judgment notwithstanding the verdict was entered for the defendant. The plaintiff has appealed from the judgment and the order therefor. The facts necessary to be stated are as follows:

Pursuant to a builder's contract and certain plans and specifications, the plaintiff contracted to erect a certain hotel building at Lakota, N. D., for a stated consideration of $28,800. In his complaint, the plaintiff alleges that he has performed the conditions of the contract, and that there is due thereon $6,656.83; further, that he furnished certain extras of the value of $750. In his answer, the defendant alleges, in addition to the assertion of certain payments and existence of certain liens, that plaintiff did not perform the contract according to the terms and conditions thereof; that the plaintiff performed the work in an unworkmanlike manner and left the building unfinished, and employed incompetent and negligent workmen, and failed to properly construct or complete such building, although repeatedly notified by the architect to so do; that plaintiff has failed to produce a certificate from the architect showing compliance with the contract, and the architect has refused so to make a certificate by reason of plaintiff's failure and refusal to complete the contract. In counterclaims, the defendant further alleges

loss of rents and profits in the amount of $3,000 through failure to complete the building at the time provided in the contract; that the defendant was compelled to pay out for materials and labor, in order to complete the building, $1,982.72, and that it will cost further to complete the building in accordance with the contract at least $6,000; that much work must be taken out and replaced in order that the building may comply with the contract, which will cost at least $3,000; that the building as constructed, even after doing the work possible so as to make the building usable, will be worth at least $5,000 less than if it had been constructed according to the contract. The defendant accordingly asked for damages in the sum of $17,000.

The contract is dated June 7, 1917. Among other things, it provides:

"It is understood between the parties hereto that the work included in this contract is to be done under the direction of the said architect, and that his decision as to the true construction and meaning of the drawings and specifications shall be final." "No alterations shall be made in the work except upon written order of the architect; the amount to be paid by the owner or allowed by the contractor by virtue of such alterations to be stated in said order." "Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architect, the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract, and if the architect shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work, and to enter upon the premises and take possession, for the purposes of completing the work included under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the con-

tractor, but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified to by the architect, whose certificate thereof shall be conclusive upon the parties."

The contract also provides for payment of the contract price in current payments and a final payment upon the certificate of the architect. During the course of the work the plaintiff had a foreman on the job; the architect also had a superintendent. In September, 1917, the architect complained of unsatisfactory work, due to incompetent workmen, principally concerning plaster work, lintels, coping on the east and south walls, failure to waterproof cistern in accordance with specifications, and other particular items; also, in another letter in September, the architect complained of the work of the painter, subcontractors, of the ventilators not being installed according to specifications, and the omission of an angle. Again, on October 4, 1917, the architect in a letter advised the plaintiff that some of the work was unsatisfactory; that the ventilators on the roof were not pursuant to specifications; that the brickwork over the window in the lobby and a brick pier had not been reset. Again, on October 20, 1917, the architect advised the plaintiff that the temporary roof on the building had been cut up and roof boards were buckling, and the plaster was damaged, necessitating resetting the roof boards and removing damaged plaster; that the plaster work was irregular and crooked and had cracked; that some brickwork had not been relaid; that the lathing in the basement was not being done properly. On November 8, 1917, the architect wrote Parsons, an employee of the plaintiff, that the roof was not laid pursuant to plans and specifications and that part of the roof over the kitchen was leaking; that the painting of the fire escapes would not be accepted; and that attention should be given to the screens lying about. Again, on December 17, 1917, he wrote Parsons to advise the painter not to do any more work, for the reason that he noticed that the floors were cross-scraped in a number of places and left very rough and irregular. In January, 1918, the architect made a list of the defects in the construction of the building and mailed the same to the plaintiff. In the list 43 items were specified; summarizing the same, they may be stated as follows:

Coping on south and east wall to be removed and new coping.

installed; roof to be given another layer of felt and two layers of asphalt; certain brickwork to be removed and reset; railings around areas not secured to the brick walls by expansion bolts; rubbish not removed from the site; plaster beams not finished; coal chute doors not properly set; window frames not properly caulked; stair stringers loose; fire escapes to be painted; fills around the walls not soaked and tamped; broken glass to be replaced; all glass to be cleaned; certain plastering to be replastered, and certain varnishing to be done.

On February 6, 1918, the contractor advised the plaintiff that his men had left a large pile of debris on the west side of the building; that it must be removed immediately or he would instruct the owners to remove it; that the hotel committee had employed a man to heat the building at $50 per month, and had directed the expense thereof to be charged to the contractor. On February 15, 1918, plaintiff wrote the architect and the defendant that the hotel job was completed and that he would not further heat the building. It appears that later the plaintiff had a conference with the hotel committee, and the defects in the construction of the building were considered and an inspection trip made by the parties through the construction. Thereafter, in May, 1918, plaintiff did further work on the building, and later advised the architect that the hotel building was complete. After the building was left by the plaintiff, the defendant heated the building and hired a foreman. It had certain work done on the construction, for which it paid out various sums of money, such as for redecorating, for lumber bills, for coal and labor, carpenter work, and such other items. These amount to approximately $1,900.

On the part of the defense, testimony was adduced that the plaintiff had incompetent workmen; that the work was performed in a careless, hasty, and unworkmanlike manner, of which the contractor had notice; that, in particular, the cistern walls were not waterproofed according to specifications, although the plaintiff did the work twice; that the work would have to be done again and would cost $800 to replace; that a concrete coping was put on the wall not in accordance with the plans and specifications; that this coping cracked or fell off; that it was ordered off, and the plaintiff installed another and this was likewise defective; that it endangered the walls in its present shape; that the roof job was poor; that roof boards were installed when wet and upon drying they curled; that in reinstalling the coping the roof was damaged and

pierced; that the roof leaked and stained the walls beneath so that they could not be finished in white; that the brick in the walls were not cleaned in accordance with specifications; that the fire escapes were given only one coat of paint instead of two, as required; that the area walls were improperly built; that the defendant was compelled to rebuild one of them; that the iron guards were not fastened with expansion bolts as required; that the plaintiff failed to soak and tamp the fills around the walls as required; that he failed to remove a large pile of rubbish at the rear of building; that the floors were improperly laid and were in bad condition; that they had valleys in them, were not drawn tight, and the carpenters used too large nails; that the floors were improperly varnished; that the varnishing was done at a time when the building was dusty, through carpenters and other workmen about, so as to occasion the varnish to be filled with dust and dirt; that the stucco work in the vestibule was put on wrong, the tile floor left unclean, the plastering was uneven, and the doorframes and doors were improperly fitted; that the chute doors in the basement were too small and were not fitted; that the metal windows were too small for the brick openings; that much glass was broken; that the canopy had a roof that leaked like a sieve; that the cistern leaked when the plaintiff left the job; that the cement floor in the basement was crumbly and uneven; that there is a bulge in the partition between the dining room and the lobby; and that there is no way in which the building may be made to appear as the plans and specifications require.

In behalf of the plaintiff, evidence was adduced, through an architect and a contractor, both of many years' experience, that they examined the building in May, 1918 that its construction is in substantial compliance with the plans and specifications, with minor exceptions and small minor defects; that the roof was all right and the brickwork was done in a good and workmanlike manner; that the warping of the doors was unavoidable through the kind used; that the doors fitted well and the flooring was good; that no stains were noticed on the walls and ceilings; that there was nothing wrong with the vestibule; that the swelling in the floor may have been caused by dampness; that it was improper to use oakum for caulking window frames; that no doorframes were found not set according to the plans; that the roof did not show any buckling of the roof boards; that there is a deviation in the wall between the lobby and the dining room, but it is not a deviation from the plans and specifi-

cations; that the floor in one of the rooms, kept by the defendants for purposes of showing how the floor was laid and finished, is not the same as when they examined it, but has been tampered with; that the right material was not used for waterproofing the cistern; that, concerning the windows, the jamb is too light and could be easily corrected by taking the moulding off and the oakum out and setting them down on the brick.

The plaintiff testified that the architect made a change in the plans and specifications concerning a concrete coping instead of a terra cotta coping; that he received revised details therefor, which had been prepared by the architect and were left by the plaintiff in the building. There is a letter in the evidence, July 5, 1917, to such effect. The defendant's architect denies submitting such revised details for concrete work and that the letter therefor was probably sent out by some one in his office. The plaintiff further testified that the first coping was placed under the direction of the architect's superintendent; that he afterwards replaced it with another coping, as directed; that he did not think the criticisms concerning the roof were just, but he was willing to have the company who manufactured such roof replace it and to make allowance so to do; that the architect directed him to clean the brick, although he knew it could not be done with water and acid; that he caulked the windows, as the architect suggested, with oakum, although there is a regular caulking paste for such purpose; that he intended to put in expansion bolts in the areaway and it would cost only $5 or $6 so to do; that he used the J. M. material specified for waterproofing the cistern; that the transoms were not loose; that the walls and ceilings were not stained; that there were no doorsteps not nailed nor irregular plaster; that the fire escapes were painted twice; that he tamped the fills around the walls, but did not soak them; that it was unnecessary to do both; that there was a big pile of rubbish on the site when he commenced the construction of the building. Plaintiff conceded that the amount due him would not exceed $5,792.17.

The trial court, denying a motion of the defendant for a directed verdict, submitted the cause to the jury upon instructions requiring the jury to find a substantial compliance with the contract in order to permit plaintiff's recovery, and that the jury upon so finding might then determine the amount due and owing the plaintiff under the contract. He charged the jury that where it appears that the contractor has endeavored to perform his contract in

good faith and according to its terms, and has done so except as to unimportant omissions or deviations which are the result of mistake, oversight, or inadvertence, and were not wilful and intentional and are susceptible to remedy, so that the owner will get substantially the building he has contracted for, then the contractor is said to have substantially performed his contract.

The jury returned a verdict of $3,541.46 in favor of the plaintiff. Before rendition of the verdict, the jury came before the court and asked certain questions. One juror stated that—

"We cannot agree as to what the figures were for the repairs—what the repairs cost—and we are wondering if we could get these figures from the testimony."

The court advised them that the bills were not introduced in evidence, and that, if it was the purpose of the jury to allow certain items for repairing certain defects which would be found to be only minor defects, the jury would have to do the best it could to remember them. A juror asked if the plaintiff had allowed in his testimony the full amount of the claim for the cistern. The court advised the jury that they would have to remember the testimony the best they could.

The plaintiff maintains that the question of substantial compliance was for the jury, and that it was error for the trial court to reverse its findings.

The respondent contends that the verdict of the jury disclosed lack of substantial compliance with the contract; that, deducting interest allowed in the verdict, there remains the sum of $2,488.49 as the amount awarded by the jury for omissions and defective work; that this award of such a substantial sum establishes incontrovertibly failure to substantially comply, that accordingly the plaintiff cannot recover pursuant to the principles of law announced in Anderson & Hunter v. Todd, 8 N. D. 158, 77 N. W. 599; Braseth v. Bank, 12 N. D. 486, 98 N. W. 79; Marchand v. Perrin, 19 N. D. 794, 124 N. W. 1112.

### Decision.

Ordinarily, the question of the substantial performance of a building contract is one of fact for the jury. Pitcairn v. Hiss Co., 113 Fed. 492, 51 C. C. A. 323; Elizabeth v. Fitzgerald, 114 Fed. 547, 52 C. C. A. 321; Fitzgerald v. La Porte, 64 Ark. 34, 40 S. W. 261.

The jury found that there was a substantial performace of the contract; the instructions of the court required them so to do in order to find for the plaintiff. The defendant maintains, however, that the verdict, as returned, shows an allowance of $2,488.49 awarded for omissions and defective work; that the amount so allowed by the jury was a substantial sum, and that that which requires a substantial sum to finish is not substantially finished; that, accordingly, the finding of the jury furnished an incontrovertible fact requiring the court to order judgment notwithstanding the verdict. It may be somewhat difficult to understand the items of allowance and disallowance in the verdict returned. This, however, is not a source of wonder. The record was long; the instructions were oral; the jury returned to the court after retirement to learn something about the figures concerning the cost of repairs; the bills therefor were not introduced in evidence. It appears, however, that the defendant took possession of the building and proceeded to make repairs of the omissions and defects alleged and proceeded to furnish labor and materials towards completing the contract.

In its answer the owner sets up as counterclaims the amount of this work and material furnished. This amount, covering decorating, floor cleaning, varnishing, cleaning up premises, carpenter work, and materials furnished totals $1,917.41. In accordance with the figures of the respondent this would leave $571.08 over and above the labor and material furnished after the owner took possession of the building. If, however, the jury did not allow interest, the amount would be $333.30. The only basis for stating that possibly the jury did not allow interest is a possible misconstruction that the jury may have placed upon the instructions of the court when the jury returned to the court for further information. The court stated that the extreme limit of the plaintiff's recovery was $5,792.17, although previously it had instructed the jury to allow interest. It is true that the owner asserts, and there is evidence to show, that the plaintiff wilfully abandoned the contract and failed in many respects to perform the conditions thereof. On the other hand, there is evidence in the record that there has been a substantial performance of the contract, either by the builder or owner, or both. Under the circumstances, substantial performance might occur through the work and materials furnished by the owner after taking possession.

In Hunn v. Penn. Inst. for Blind, 221 Pa. 403, 70 Atl. 812, 18 L. R. A. (N. S.) 1248, the court, concerning a contract provision giving the

owner the right to take possession and complete the building, stated:

"We therefore hold that the averment of complete performance in so far as the construction of the building is involved is sustained by proof which shows that the contractors performed a large part of the work, and that the building was finally completed by the owners in accordance with the contract."

Again, in Van Clief v. Van Vechten, 130 N. Y. 580, 29 N. E. 1019, the court said:

"The owner, however, although under no obligations to do so, completed the building herself, according to the contract, which thus continued operative through her action. After the contractor refused to proceed she performed the contract for him, as it expressly permitted her to do. As her action was according to the contract, it will be presumed, under all the circumstances and in support of the judgment, that it was under the contract. While she threatened to cancel it, there is neither finding, nor request to find, that she did cancel it, and instead of pleading a cancellation or rescission in her answer, she asked to have the amount expended by her to complete the building 'allowed as a set-off or counterclaim to any claim of the said defendant Smalle or the plaintiffs herein, or of any of the other defendants herein, in case the court should eventually determine that the said defendant Smalle is entitled to any sum whatsoever under the said contract.'"

Accordingly, we are not prepared to hold, as a matter of law, that there has not been a substantial performance of the contract because the jury possibly allowed, as deductions, either $571.08 or $333.30 in addition to the items furnished by the owner after taking possession. The allowance of such amount is not necessarily fatal to the finding of a substantial compliance, if the jury saw fit to give credence to the testimony of plaintiff's witnesses. Jefferson Hotel Co. v. Brumbaugh, 168 Fed. 867, 94 C. C. A. 279.

The failure or refusal of the architect to issue a certificate did not preclude right of action by the plaintiff. 9 C. J. 763; Hunn v. Penn, Inst. for Blind, supra; Nolan v. Whitney, 88 N. Y. 649.

It is ordered accordingly that the judgment of the trial court be reversed, and judgment be entered pursuant to the verdict of the jury.

ROBINSON, J., concurs.

BIRDZELL and CHRISTIANSON, JJ., dissent.

GRACE, C. J. (specially concurring). The question of substantial performance of the contract was one of fact for the jury and under proper instructions was submitted to it. All of the facts were submitted to the jury. It returned a verdict in plaintiff's favor, which should have been permitted to stand. The trial court, however, upon motion for judgment notwithstanding the verdict, entered judgment for the defendant. This was error. The judgment of the trial court should be reversed, and judgment entered on the verdict.