111 So.2d 597

**BIRMINGHAM TRUST NATIONAL BANK**

v.

**CULLMAN–JEFFERSON COUNTIES GAS DISTRICT.**

**6 Div. 393.**

Supreme Court of Alabama.

Feb. 26, 1959.

Rehearing Denied May 14, 1959.

Bland & Bland, Cullman, for appellant.

St. John & St. John, Cullman, and Dumas, O'Neal & Hayes, Birmingham, for appellee.

MERRILL, Justice.

This is an appeal by the Birmingham Trust National Bank from a final decree of the Circuit Court of Cullman County, in Equity, in an action by The Cullman-Jefferson Counties Gas District for a declaratory judgment and incidental relief against the Birmingham Trust National Bank and numerous other persons, firms and corporations who are the owners and holders of the outstanding First Mortgage Natural Gas Revenue Bonds of the Gas District.

The action seeks an adjudication of a controversy as to the construction of certain provisions of a mortgage and indenture of trust dated September 1, 1953, which we shall hereafter refer to as the mortgage. The mortgage was executed by The Cullman-Jefferson Counties Gas District, a public corporation organized under Act No. 762, Acts of Alabama 1951, p. 1319, and to which we will hereafter refer as the District, to the Birmingham Trust National Bank, as trustee. The mortgage authorizes the issuance thereunder of an aggregate of $3,300,000 principal amount of bonds, of which there are now outstanding $3,100,000 of bonds numbered 1 to 3100. The bonds are in the denomination of $1,000 each, mature serially on March 1 in each of the years 1959 through 1984, inclusive, and bear interest at the rate of 4¾ percent per annum, payable semi-annually on March 1 and September 1 in each year until maturity. The bonds are all equally secured by the mortgage and the principal and interest on the bonds are payable solely out of the system constructed from the proceeds of the sale of the bonds, after the deduction of only the reasonable expenses incurred for the operation, maintenance and repair thereof. The remaining authorized bonds, in the principal amount of $200,000, numbered 3101 to 3300, were signed by the officers of the District and delivered to the Birmingham Trust National Bank, as trustee, at the time the original bonds were issued, sold and delivered, and are now held by the bank, as trustee, in accordance with the provisions of Section 6(b) of the mortgage, which provides as follows:

"Not withstanding anything contained in this section, the Trustee shall not authenticate nor deliver upon any order of the District, any of the Bonds numbered from 3101 to 3300, inclusive, unless theretofore or simultaneously therewith there shall have been delivered to the Trustee (1) a certified copy of a resolution of the District requesting the Trustee to authenticate and deliver for a specified price all or a portion of such Bonds which shall include the Bonds bearing the lowest numbers and (2) certificates of the Construction Engineers and Consulting Engineers stating that the System cannot be completed in accordance with the plan and specifications prepared therefor with the funds available therefor and that additional moneys in an amount equal to such specified price will be needed to complete such construction and to provide for the payment of interest on such Bonds to and including September 1, 1955."

The District has delivered to the appellant bank, as trustee, the resolution and the certificates referred to in the above quoted section of the mortgage and the bank has refused to authenticate and deliver the bonds as requested for two reasons. One reason assigned by the bank for its refusal to authenticate and deliver the bonds as requested is that the system has already been completed, as is evidenced by certificates of completion heretofore delivered to it in 1955 and 1956 by the construction engineer and the consulting engineer.

The letter to the trustee from the construction engineer, written on May 4, 1955, reads, in part, as follows:

"This letter shall also be considered our certificate to the effect that the construction has been completed substantially in accordance with the plans and specifications previously approved and the completed system has been tested and approved by us. All expenses of purchasing and constructing the system have been paid and other obligations, of which we have any knowledge, incurred by the District in connection with such purchase and construction have been paid in full."

This letter apparently was written in compliance with Section 7 of the mortgage, which provides that the construction engineer shall, upon completion of construction, certify to the District and the trustee as to the date of completion of construc-

tion, the conformity of construction with the final plans and specifications, the readiness of the system to operate in a normal and satisfactory manner, the final construction costs as compared to estimates therefor, and the disposition made of expended construction funds.

The consulting engineer, by telegram dated February 29, 1956, notified the trustee as follows:

"In accordance with Section 8, Cullman-Jefferson Counties Gas District Indenture dated September 1, 1951, we certify 'that such construction has been completed in accordance with plans and specifications previously approved, that such completed system has been tested and approved by us and that all expenses of purchasing and constructing the system and all other obligations incurred by the District in connection with such purchase and construction have been paid in full', such certification being based upon and subject to methods and conditions fully described in our letter to you dated February 13, 1956. Confirmation of this telegram will follow by letter."

After none of the holders of the outstanding bonds, who were joined as party respondents, appeared, the appellant bank filed an answer in which it denied the material allegations of the complaint and joined in the prayer for a declaratory judgment. All the named respondents, except the Birmingham Trust National Bank and one individual, are non-residents of Alabama.

The cause was submitted for final decree on numerous exhibits and the testimony of witnesses taken in open court. On the basis of the pleadings and the testimony, the court wrote its opinion and entered its final decree. In its opinion the court found, inter alia, that there are no moneys in the Bond and Interest Fund provided for in the mortgage to meet the March 1, 1959, principal and interest payment due, in the amount of $132,625, on the outstanding

bonds and that as of October 31, 1958, the District had only $91.88 on deposit in the Gross Revenue Account and $4,447.44 in the Operation and Maintenance Fund, and no moneys in any of the other funds provided for in the mortgage. The court further found that the gas system was in fact not complete as contemplated and provided for in the mortgage and that any "certificate, opinion, statement, or conclusion" to the contrary is in error and is not binding under the mortgage.

In its decree, the court granted the relief prayed for by the Gas District and ordered the Birmingham Trust National Bank to authenticate and deliver the remaining bonds. From that decree, the bank appeals.

The real question is, what is the meaning of the term "completed" as used in Section 6(b) of the mortgage? Appellant bank asserts that it has no authority under the mortgage to authenticate and deliver the remaining bonds because the system has already been completed, as is evidenced by the two certificates of completion heretofore delivered to it in 1955 and 1956 by the consulting engineer and construction engineer. Hence, the bank argues that the word "completed" as used in Section 6(b) of the mortgage means structurally completed. Appellee, to the contrary, has provided us with an ingenious argument contending that the word "completed" as used in Section 6(b) of the mortgage contemplates a sound financial basis for the Gas District, it having become self-liquidating financially before it can be considered as "completed." Although we have been unable to discover any cases precisely in point in such a situation as this, the certificates provided for in Sections 7 and 8 of the mortgage and subject to the interpretation of Section 6(b) are not unlike the certificates which an architect or an engineer is often required to make and issue under a building or construction contract. While there appear to be few Alabama cases relating to the subject, it is generally held that contractual provisions that the

amount, classification, sufficiency and completion of work done under a building or construction contract by the contractor, shall be determined by an architect, engineer, superintendent, or other person, are valid, and will be sustained. Mercantile Trust Co. v. Hensey, 205 U.S. 298, 27 S.Ct. 535, 51 L.Ed. 811, 10 Ann.Cas. 572; J. E. Salfisberg & Co. v. City of St. Charles, 154 Ill.App. 531; Baylies v. Bent, 185 Ill.App. 437; Hunn v. Pennsylvania Institution, 221 Pa. 403, 70 A. 812, 18 L.R.A.,N.S., 1248; Ryan v. Curlew Irrigation & Reservoir Co., 36 Utah 382, 104 P. 218; Guarantee Title & Trust Co. v. Willis, 38 Ariz. 33, 297 P. 445. And though the majority holds that to make such a certificate or decision conclusive requires plain language in the contract, at least one court has held that it may be implied. Monson v. Fischer, 118 Cal. App. 503, 5 P.2d 628; Annotation 110 A.L. R. 139. Even though we are not prepared to say that the two certificates from the construction engineer and the consulting engineer are conclusive as a matter of law as to the completion of the gas system, we believe that both are strong evidence of, and expert evidence of, the structural completeness of the system, as is plainly stated in both the letter and the telegram. Were we to accept the appellee's definition of the term "completed," the mortgage would provide for the certification of the financial soundness of the gas District by two engineering firms. It is clear that such was not the intent of the drafters of the mortgage.

There is an abundance of evidence showing that the present facilities of the District in operation are inadequate to provide net revenues to pay the principal of and the interest on the outstanding bonds. In the fiscal year ending February 28, 1955, the projected estimate made to prospective bond purchasers of the number of customers served was 3,530. In actuality, only 1,265 customers were served. It followed that instead of the projected estimate of $167,361 net revenue for that year, the District showed an actual net revenue of $40,410. In the fiscal year ending Febru-

ary 28, 1958, the projected estimate made of the number of customers served was 4,048, while the actual number served was 2,794. The estimated net revenue for that year was $258,349 and the actual net revenue was $182,498.11. And from February 28, 1958, to October 31, 1958, instead of a projected estimate of $289,922 net revenue, the District reported only $48,012.59. The District contends that it has exhausted every effort to induce these prospective customers to become active users of natural gas service. Although positive results have been accomplished, the District states that it needs the additional money for construction funds to "complete" the system in order that it may begin to operate on a financially sound basis and that it is not possible for the District to obtain, within the time that is available, enough of these customers to build up its revenues sufficient to meet debt service requirements.

Appellee has cited to us the case of Fuller v. City of Cullman, 240 Ala. 309, 199 So. 2, 6. In that case, the City of Cullman employed engineers to make plans and specifications and an estimate of the cost of a sewage disposal system. Upon receipt of plans, specifications and estimates of cost, the City authorized the issuance of its sewer revenue bonds to pay the cost of construction of the sewage disposal system and these bonds were issued, sold and delivered. The engineer who drew the plans and specifications and estimated the cost of construction of the system concluded that what is generally called "primary treatment" would meet the needs of the City in the disposal of its sewerage. Based on this estimate, the disposal system was built and put into operation only to discover that as a matter of fact "primary treatment" alone was insufficient for the disposal of the City's sewerage and that it was necessary to install a secondary and final treatment plant. The City proposed to finance this construction by amending the original bond ordinance and by issuing additional revenue bonds. The question before this court on appeal was whether the issuance and sale of the additional bonds payable from the revenues

of an existing system would violate Sections 222 and 225 of the Constitution of Alabama. Section 225 of the Constitution fixes a limit on the amount to which a city, town or municipal corporation shall become indebted. Section 222 provides for authorization by a majority vote of the qualified voters for the issuance of such bonds. We held in that case that the issuance and sale of the additional bonds payable from the revenues of the then existing system would not violate these two sections. We said:

"The proposal under consideration does not, in truth and in fact, contemplate an extension of or additions to a sewerage system to meet the growing needs of the city, and is but a proposal to complete the system originally contemplated. The action here sought is but the continuation of the original venture, the completion of an unfinished sewage disposal system left incomplete by reason of an error, or a miscalculation on the part of the city's engineers."

Appellee argues that likewise, in the instant case, the action here sought is but the "continuation of the original venture," the completion of the system originally contemplated, and further that the system is, in "truth and in fact" incomplete, and any certificate, opinion, statement or conclusion to the contrary is in error and is not binding under the mortgage. We believe that that case is distinguishable from the instant one.

In the Fuller case, the bonds were sought to be issued because the sewerage system was not structurally completed for its intended purpose, it did not produce its final result of disposing of sewerage. Its very functional purpose was not met by a "primary treatment" but the necessity of "secondary and final treatment" was evident. Several actions for injunctions on the basis of nuisance were already in court and other like suits and suits for damages were threatened. This is different from the instant case. The gas system is substantially complete as evidenced by the two certificates from the engineers who built and supervised its completion. It was and is functioning in accordance with structural plans and specifications. Its functional purpose of supplying natural gas is accomplished, and in February, 1958, there were 1,384 idle service lines available for customer use. No court actions on the basis of nuisance or actions for damages threaten to stop the gas system from continuing to function as in the Fuller case On the one hand, the sewerage system in the Fuller case was a mechanical failure incapable of performing its purpose of sewerage disposal, while in the instant case, the Gas District is capable of supplying natural gas, but lacks the customers necessary to insure sound financial operation. The difference is readily apparent. To restate the obvious conclusion, the sewerage system was never in fact completed until the addition of the secondary and final treatment systems. At that time, it was capable of performance. The gas District stands ready to perform; but is unsound financially because of a lack of demand for its product.

As noted, supra, the bonds are payable solely from the revenues of the system and there is no other source for their payment. The remaining bonds, which the bank refused to authenticate and deliver, are part of the same issue of bonds and are likewise payable solely from the same revenues. The revenues are pledged equally and ratably to all of the bonds, without preference or priority by reason of the prior issue, sale or negotiation thereof and all bonds employ the same rights and liens and all are equally secured under the mortgage. If the remaining bonds are issued, the debt service requirements payable from revenue will be increased in the amount of $9,500 each year to and including 1984, and in 1984 in the additional principal amount of $200,000. This added charge on the revenues of the gas District will to this extent dilute the

security of the holders of the presently outstanding bonds.

We hold that the term "completed" as used in Section 6(b) of the mortgage and indenture of trust means structurally completed and that the two certificates from the consulting engineer and the construction engineer are strong evidence of and expert evidence of this fact of completion. When the court below interpreted the word "completed" to be that The Cullman-Jefferson Counties Gas District be on a sound financial basis and "self-liquidating" it committed reversible error. It follows, therefore, that the decree of the lower court ought to be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.