147 So.2d 805

**FIRST NATIONAL BANK OF BIRMINGHAM**

v.

**SOUTHEAST ALABAMA GAS DISTRICT.**

4 Div. 51.

Supreme Court of Alabama.

Dec. 20, 1962.

Cabaniss & Johnston, Wm. H. Trueman and Geo. F. Maynard, Birmingham, for appellant.

M. Camper O'Neal, Dumas, O'Neal & Hayes, Birmingham, Jas. M. Prestwood, Prestwood & Prestwood, Andalusia, and Alto V. Lee, III, Lee & McInish, Dothan, for appellee.

LIVINGSTON, Chief Justice.

This is an appeal by the First National Bank of Birmingham, as Trustee, from a final decree of the Circuit Court of Covington County, in Equity, dated March 8, 1960, and a decree supplemental thereto, dated April 6, 1960, in an action brought by the Southeast Alabama Gas District for a declaratory judgment and incidental relief against the First National Bank of Birmingham, as Trustee, and numerous other persons, firms and corporations, who are the owners and holders of the outstanding first mortgage natural gas revenue bonds of the Gas District.

Under and by virtue of Act No. 762, Acts of Alabama 1951, p. 1319, the Southeast Alabama Gas District, a public corporation, hereinafter called the District, was organized in January, 1952, to bring natural gas to Southeast Alabama.

On February 22, 1952, Goodwin Engineers, Inc., who were subsequently designated Construction Engineers, were employed by the District to design a gas system and supervise its construction. Goodwin Engineers, Inc., submitted their final engineering report on September 1, 1954. On September 23, 1954, the District executed to the First National Bank of Birmingham, as Trustee, hereinafter called the Trustee, a mortgage and indenture of trust, hereinafter called the mortgage.

The mortgage authorized the issuance thereunder of an aggregate of $20,000,000 principal amount of bonds, of which there are now outstanding $19,500,000 of bonds, numbered 1 to 19,500. These bonds are in the denomination of $1000 each, maturing serially on April 1, 1955, and each of the years 1955 through 1989, inclusive, and principal interest at the rate of 4½ per cent per annum, payable semiannually on April 1 and October 1 in each year until maturity. Although the mortgage was dated, for convenience, as of April 1, 1954, to coincide with the interest payment dates, and the principal amount of the bonds authorized thereunder were dated October 1, 1954, the first interest payment date was April 1, 1955, but as noted above, the mortgage was executed by the District on September 23, 1954. The bonds are all equally secured by the mortgage, and the principal and interest on the bonds are payable solely out of the system constructed from the proceeds of the sale of the bonds, after the deduction of only the reasonable expenses incurred for operation, maintenance and repair thereof. The remaining authorized bonds, in principal amount of $500,000, numbered 19,501 to 20,000, were signed by the officers of the District and delivered to the Trustee at the time the original bonds were issued, sold and delivered, and are now held by the Trustee, in accordance with the provisions of Section 6(b) of the mortgage, which provides as follows:

"(b) Notwithstanding anything contained in this section, the Trustee shall

not authenticate nor deliver, upon any order of the District, any of the Bonds numbered from 19,501 to 20,000, inclusive, unless theretofore or simultaneously therewith there shall have been delivered to the Trustee (1) a certified copy of a resolution of the District requesting the Trustee to authenticate and deliver for a specified price all or a portion of such Bonds which shall include the Bonds bearing the lowest numbers, and (2) certificates of the Construction Engineers and Consulting Engineers stating that the System cannot be completed in accordance with the plans and specifications prepared therefor with the funds available therefor and that additional moneys in an amount equal to such specified price will be needed to complete such construction and to provide for the payment of interest on such Bonds to and including October 1, 1956."

In November, 1953, construction bids were received on ten contracts; Contracts numbered 1 and 2 for the transmission mains of the District's system, and Contracts Nos. 3 through 10 for the distribution system. Shortly prior thereto, Duff and Phelps, who were later designated Consulting Engineers in the mortgage, were employed by John Nuveen and Company, the prospective purchasers of the bonds of the District, to investigate and prepare a report on the economic feasibility of the District's proposed project, with particular reference to the proposed revenue bonds. Such report was made on August 20, 1954.

In December, 1954, construction of the District's system commenced.

In March, 1955, the necessity for conserving construction funds became apparent to the Consulting Engineer. In August, 1955, the District, in accordance with the recommendation of the Consulting Engineer, ordered the discontinuance of work by the contractors, and the District itself undertook this work in order to conserve and make more efficient use of the Construction Fund. The contractors were stopped from constructing transmission mains as well as the distribution system. The system at that time was probably more than 95 per cent complete. At about this same time, natural gas was turned into the facilities of the District, and customers began using the gas, although the system had not been completed.

On the sale of $19,500,000 of bonds, certain payments agreed upon by all of the parties were made from the sale of said bonds, and $1,755,000 was paid into the Interest Fund (created by Section 12 of the mortgage), $213,000 was paid into the Operation and Maintenance Fund, and the balance of $16,362,000 was placed in the Construction Fund (created and its management prescribed by Secs. 6 and 7 of the mortgage), all in accordance with the provisions of the mortgage.

In May, 1956, Engineering Construction Company, a contractor under Contract No. 2 for the construction of the southeast transmission line, instituted suit in the United States District Court for the Middle District of Alabama seeking to recover the sum of $117,146.40 in addition to the retained percentage under its construction contract. Upon filing of this suit, Goodwin Engineers, the Construction Engineer, withheld its approval of further disbursements and withdrawals from the Construction Fund other than for the payment of prior fixed commitments. As a consequence, the District was without construction funds to pay for the work it had undertaken in the completion of the System. Under the mortgage, it had convenanted and agreed to complete the aquisition and construction of these facilities "with all reasonable dispatch." The District, in installing mains and services, was merely completing the original work contemplated by the contracts. Thereafter, the District began the practice of using some funds from the Operation and Maintenance Fund for capital expenditures. On December 3, 1956, the Consulting Engineer reported the sum of $83,396.-00 as reimbursement due the Operation and

Maintenance Fund for capital expenditures. On January 15, 1958, the Construction Engineer reported the sums of $58,805 and $240,723 due the Operation and Maintenance Fund for capital expenditures. Later, in order to carry forward this work, it continued the practice of borrowing from revenues in the Operation and Maintenance Fund to pay for capital expenditures.

On or about July 10, 1959, the District presented to the Trustee:

1. A certified copy of a resolution of the District requesting the Trustee to authenticate and deliver the additional bonds.

2. A certificate of the Consulting Engineer, Duff and Phelps, purporting to meet the requirements of Sec. 6(b) of the mortgage.

3. A certificate of R. W. Stafford Company, as Construction Engineer, purporting to meet the requirements of Sec. 6(b) of the mortgage (R. W. Stafford Company, as Construction Engineer, succeeded Goodwin Engineers, Inc., who resigned. No point is made as to the propriety of the Stafford Company succeeding Goodwin Engineers, Inc.).

4. A requisition by the District calling on the Trustee to make payment of the proceeds of the sale of the additional bonds into the Operation and Maintenance Fund, the requisition containing a certificate by the President of the District and purporting to meet the requirements of Sec. 7 of the mortgage.

5. A certificate of R. W. Stafford Company, as Construction Engineer, purporting to meet the requirements of Sec. 7 of the mortgage.

The Trustee, deeming these matters not in conformity with the requirements of the mortgage and the facts of the case, advised the District that it could not legally authenticate and deliver the bonds, and, further, that if the bonds were sold, it could not legally comply with the requisition of the District calling for payment of the proceeds into the "Operation and Maintenance Fund."

The bill of complaint filed by the District sought a declaration that the issue and sale of the remaining unissued bonds of the appellee were required under the terms of the mortgage governing said bonds, and ordering the authentication and delivery of the bonds by the Trustee in order that the bonds might be sold. The suit also sought to require the Trustee to transfer the proceeds of the sale of the bonds from the "Construction Fund," established by the mortgage, into the "Operation and Maintenance Fund," also established by the mortgage.

Decrees pro confesso were entered against some of the respondents and 66 answers were filed, and each bondholder who answered joined in the prayer for a declaration ordering, adjudging and decreeing that the District had the power and authority to compel the authentication and delivery of the bonds as alleged in the bill of complaint.

The lower court found, in effect, that the facilities, which are the subject matter of this suit, have been acquired and installed by the District at a total cost of $403,789.70, with moneys advanced from the Operation and Maintenance Fund established under the mortgage; that said sum is due and owing to said fund and should be repaid to it; that the aforesaid facilities are necessary to complete the District's system, as defined in the mortgage, in accordance with the plans and specifications prepared therefor; and that said facilities, to pay the cost of which the remaining bonds will be issued, do not constitute new or additional work, facilities or equipment not covered by the plans and specifications prepared at the time of the execution of the mortgage, and the basis of the construction of said system as then contemplated; that it has not been shown that a default actually exists in any of the provisions of the bonds or mortgage.

This appeal followed.

The record in this case is voluminous, as are the briefs, but the issues raised are few and simple.

After a careful consideration of the record, we are convinced that the facilities constructed and acquired are such that were contemplated by the "plans and specifications." They were such as should have been paid for out of the Construction Fund. We are also convinced that they were constructed and acquired and paid for when this suit was commenced.

We are also convinced that they were constructed and acquired and paid for out of funds properly belonging to the "Operation and Maintenance Fund."

We are also convinced that the reason that they were so acquired and paid for was because of the unusual circumstances existing at the time. That is to say, the contractors had been discharged or paid off and that a suit was pending by one of the contractors and that the Construction Engineer had restricted or would not approve payments out of the Construction Fund; that they were paid out of the Operation and Maintenance Fund for convenience, and that the bonds could not have been sold to good advantage at that time.

In the case of Birmingham Trust National Bank v. Cullman-Jefferson Counties Gas District, 269 Ala. 140, 111 So.2d 597, we had before us the question of whether "completed" meant structurally completed or that the District be on a sound financial basis and "self-liquidating." We chose the former, which is obviously correct. We are now called on to say whether or not a system which is structurally completed, but not paid for out of proper funds for that purpose, is completed within the terms of the mortgage.

Under the circumstances of this particular case, we hold that the facilities were necessary to complete the District's system as defined in the mortgage, in accordance with the plans and specifications prepared therefor; that said facilities to pay the cost of which remaining bonds will be issued do not constitute new or additional work, facilities or equipment not covered by the plans and specifications prepared at the time of the execution of the mortgage and the basis of the construction of said system as then contemplated. We, therefore, affirm the decree of the lower court.

Affirmed.

SIMPSON, MERRILL and HARWOOD, JJ., concur.