## Sley System Garages, Appellant, *v.* Transport Workers Union of America.

Argued November 14, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, BOK, EAGEN and ALPERN, JJ.

*Aaron M. Fine,* with him *Dilworth, Paxson, Kalish, Kohn and Dilks,* for appellant.

*Eugene John Lewis,* for appellee.

OPINION BY MR. JUSTICE EAGEN, January 3, 1962:

The sole question in this case is: Whether a court's order, following the granting of a preliminary injunction in referring the question of an employee's discharge

to an arbitrator who stated that the employee was to remain on the payroll until the determination, is to be considered part of a submission to the arbitrator?

William Washington, who was vice-president of Local 700, was discharged by Sley System Garages on March 1, 1961. On March 2, his fellow-employees went on a sympathetic strike and the company instituted an action in equity and secured a preliminary injunction. At a hearing on the following day, the preliminary injunction was continued with the following order: "Further hearing to be held on April 3, 1961 in Room 'A', 10:00 A.M. Employee Washington to be continued on the payroll in interval and removed off the premises. Case referred back to arbitrator Israel Ben Scheiber no later than April 3, 1961."

A hearing was subsequently held on March 29, pursuant to the order of court and the following submission was signed by counsel for both parties: "Did just and sufficient cause exist for the discharge of William Washington on March 1, 1961. If not, what shall the remedy be?" At the hearing before the American Arbitration Association, the arbitrator was granted by the lower court, via telephone, additional time until April 11, 1961, in which to file his award "with the understanding that the Grievant is not to be on the payroll from April 3, 1961."

The arbitrator found that the appellant was the only one of sixteen garage and parking lot companies with which the appellee-union had had any disputes; that the appellant had discharged three shop stewards within a period of six months; that the appellant had been harassing Washington trying to, and in fact did, trap him into refusing to obey an order to do work, which under the contract, he wasn't required to do; that the appellant had refused to arbitrate what Washington's proper assignment should be, as A. A. A. had suggested in an earlier arbitration. However, the arbitrator also

found that the work Washington was ordered to do, serving as cashier, did not endanger his safety or health and, therefore, he should have obeyed the order.

The award of the A.A.A. was as follows:

"I, the undersigned Arbitrator, having been designated in accordance with the arbitration agreement entered into by the above named parties, and have duly heard the proofs and allegations of the above parties, Award, as follows:

"a) That less than sufficient cause existed for the grievant's second discharge and that a suspension of one month, conditioned in the manner following is the proper remedy.

"b) As a condition to the grievant's return to his work with this Company he is directed, until it is determined by arbitration or by the agreement of the parties, that he need not do so, to continue to do cashier's work as he has heretofore been doing if told to do so by the Company.

"c) As further condition of his reinstatement, the grievant is directed, prior to his returning to work, to repay to the Company the monies paid to him by it from the day of his discharge, March 1, 1961 until April 3, 1961, during which time he did nothing to earn it.

"d) During the period of one month's disciplinary suspension without pay, the grievant is requested not to visit any place of business of the Sley System without the written permission of the Company.".

The appellee then filed a rule to show cause why paragraph (c) of the arbitrator's award should not be stricken. The lower court on May 15, 1961, made the rule absolute. These appeals followed.

The appellant makes a two-pronged attack: (1) That the lower court had no authority to vacate the arbitrator's award; (2) That the lower court had no authority to direct that Washington be kept on the payroll pending arbitration.

In *Newspaper Guild v. Phila. D. News, Inc.,* 401 Pa. 337, 346, 164 A. 2d 215 (1960), we stated, "Unless they are *restricted by the submission,** the arbitrators are the final judges of both law and fact and their award will not be disturbed for a mistake of either." The lower court ruled that its order of March 3, 1961, was part of the submission and we agree. The written submission of the respective parties was not inconsistent with the court's specific order that Washington was to be kept on the payroll. If it had been the intention of the appellee to agree to jeopardize the benefit it received from the chancellor's order, it would have specifically so stated. ". . . [T]he power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not included therein, or validly determine the dispute if they violate or act inconsistently with the terms of the submission. To put it another way, their powers, being derived from the submission, are measured by it." 11 Stand. Pa. Prac., Arbitration and Award, §93 (1938).

"The scope of the matters submitted to arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally: 6 C.J.S. §§27c and 80b; Marchant v. Mead-Morrison Mfg. Co., 252 N.Y. 284, 169 N.E. 386 per CARDOZO, P.J.": *Schreiber v. Ostroff,* 65 Pa. D. & C. 601, 604 (1948). That court further stated, at 606: "The ratio decidendi of the cases was not based upon either a 'liberal' or a 'strict' construction of the arbitration agreements but rather upon a careful analysis of the wording of the referral clauses in the light of the surrounding circumstances in each case as indicative of the intent of the parties to the agreement."

When the chancellor, obviously realizing, as did the arbitrator, that the appellant didn't come into equity

---

* Emphasis supplied.

with clean hands, decided to put things in status quo by placing both parties in the same position until after arbitration as they were before the dispute arose, he was exercising his broad equity powers. "Since the jurisdiction of equity has attached, this jurisdiction will be retained for all purposes so as to do complete justice." See, *Long v. Trader Horn Coal Co.*, 396 Pa. 203, 205, 152 A. 2d 257 (1959). When he ordered the parties to go to arbitration, the chancellor specifically stated that Washington was to remain on the payroll until April 3, 1961. This was a restriction on the submission and the arbitrator and respective counsel so realized it as is shown by the record when the arbitrator got permission to file his award on April 11, 1961, "with the understanding that the Grievant is not to be on the payroll from April 3, 1961." There was nothing to prevent the arbitrator from imposing penalties after April 3, 1961. But, it seems that the arbitrator felt that Washington should not collect pay merely for staying away from work in order to keep labor peace. This wasn't his decision to make, it was the chancellor's. The lower court didn't change or vary the award of the arbitrator but merely struck from the award that part which exceeded his authority under the submission. "Where the award is severable and the residue, after rejection of the invalid portion, is final, certain, and in no way affected by the departure from the submission, [the] authorities hold that it may be sustained as to such part, although void to the extent that it exceeds the submission." 3 Am. Jur., Arbitration and Award, §123.

Orders affirmed.

Mr. Chief Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.