459 A.2d 765

**GIANT MARKETS, INC., Formerly M.L. Hodin, William Hodin, Joseph Hodin and Jack Hodin, t/a Giant Markets**

**v.**

**SIGMA MARKETING SYSTEMS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 16, 1981.

Filed April 15, 1983.

116

McEwen, J., dissented and filed opinion.

118

Francis P. Devine, III, Philadelphia, for appellant.

Thomas P. Kennedy, Scranton, for appellees.

Before McEWEN, JOHNSON and WATKINS, JJ.

JOHNSON, Judge:

This is an appeal from the order of a trial court *en banc* vacating the award of an arbitrator rendered as a result of a common law arbitration of a contract dispute between Sigma Marketing, Inc. (appellant) and Giant Markets, Inc. (appellee). The trial court *en banc* concluded that appellant breached the terms of a stipulation entered into by both parties on January 22, 1980. Since we conclude that the stipulation was not breached, and more fundamentally, we

believe that the trial court *en banc* erroneously exceeded the limited scope of review applicable to common law arbitration, we reverse.

On August 2, 1977, in settlement of prior litigation, not relevant here, the parties concluded an agreement which included the following arbitration clause:

"In the event of any dispute between the parties under this Agreement, the same may be submitted to arbitration by either party in accordance with the rules of the American Arbitration Association."

The clause was later supplemented on January 22, 1980 by the following written stipulation entered into by the parties:

"MR. DEVINE: This will be for the benefit of the Arbitrator. We had extensive settlement discussions during the depositions here today. We both agreed as counsel and the parties agreed that no mention of settlement was to be made to the Arbitrator; and in the event that one of the parties broach the subject to the Arbitrator without the knowledge of the other party, we are in agreement that the Arbitrator shall immediately discontinue the hearing, remove himself as an Arbitrator, and ask that the matter be reassigned to someone else; is that what we agreed to?

"MR. KENNEDY: Yes."

Subsequently, the parties commenced an arbitration proceeding pursuant to the above-quoted arbitration provision as modified by the stipulation. Several days of testimony had been taken when the incident that precipitated this appeal occurred. During a break from the hearing, a Mr. Roth, an officer of appellant corporation, who knew of the stipulation between the parties, made mention of the subject of settlement in response to a question from the arbitrator. More specifically, it is alleged that Mr. Roth stated to the arbitrator that "no reasonable cash settlement had been offered." Since this occurred during the break, it occurred off the record and we have relied upon the recollections of the parties and the arbitrator for an account of what happened.

Three issues are presented for consideration. The first issue is: whether or not appellee waived any objection it had to the continuation of the arbitration proceedings after a dispute arose regarding the stipulation. The second issue is framed differently by both parties. Appellant frames the issue as whether or not the trial court *en banc* erred by substituting its own factual finding when there was no evidence that the award was induced by any fraud, misconduct, corruption, or other irregularity causing it to be unjust, inequitable, or unconscionable. Appellee frames the issue as a question of whether the arbitrator exceeded the scope of submission. The third issue is: whether or not appellant breached the terms of the stipulation.

For reasons set forth in more detail below, we agree with the trial court *en banc* that appellee did not waive its objection to the continuation of the arbitration hearing.

Put simply, appellant's waiver argument is that appellee cannot preserve the dispute regarding the stipulation for appellate review by merely entering an objection upon the record. Appellant asserts that appellee had to adjourn the hearing and seek immediate judicial determination of his objection. Otherwise, appellee's continued participation in the hearing operated to waive its objection. Appellant relies on a line of cases, representative of which are *Christman v. Moran*, 9 Barr 487 (1848), *Capecci v. Joseph Capecci*, 392 Pa. 32, 139 A.2d 563 (1958) and *Rosenbaum v. Drucker*, 346 Pa. 434, 31 A.2d 117 (1943). *Christman* holds that a party's objection is waived by proceeding with the arbitration *protestando*. *Capecci* and *Drucker* hold that a party waives an objection by submitting the dispute to arbitration and participating in the hearing in spite of having an objection to the proceeding. We are not persuaded by appellant's argument that these cases control the instant situation.

On similar facts, our supreme court distinguished the cases of *Capecci* and *Drucker* in *Abramovich v. Pennsylvania Liquor Control Board*, 490 Pa. 290, 294 n. 3, 416 A.2d 474, 476 n. 3 (1980) (a statutory arbitration case).

*Abramovich* involved the submission to arbitration of a contract dispute between Felix Abramovich and the Pennsylvania Liquor Control Board (PLCB). Unbeknownst to Abramovich, the arbitrator appointed to hear the dispute had a past and continuing relationship with the PLCB. Upon learning of the arbitrator's affiliation with the PLCB, Abramovich challenged the arbitrator's appointment. This challenge occurred after the beginning of the hearing but before the rendering of the award. The arbitrator denied the challenge and rendered an award in favor of the PLCB. In a footnote, the supreme court concluded that where the ground for objection was not apparent prior to the arbitration hearing and it was raised at the earliest opportunity after learning of it, the issue was properly preserved for review.

Unlike *Christman, Drucker* and *Capecci,* in the instant case no ground for challenge to the proceeding existed prior to the hearing. When grounds for objection became apparent, appellee raised the issue of violation of the stipulation at the earliest opportunity after it occurred. We are persuaded that *Abramovich* controls this case. Therefore, appellee has sufficiently preserved the issue for review by noting its objection in a timely fashion.

■ In reviewing a common law arbitration award, the first task of a court is to determine whether the parties have agreed to arbitrate, then once it is determined that the parties have agreed to arbitrate, the issue becomes whether the dispute in question falls within the purview of the submission. *Borough of Ambridge Water Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974). *See also Flightways Corporation v. Keystone Helicopter Corporation,* 459 Pa. 660, 331 A.2d 184 (1975). The arbitrability of the contract dispute underlying this matter is uncontroverted by the parties.

The questions presented by this appeal address the authority of an arbitrator once a matter is properly in arbitration. In *Sley Systems Garages v. Transport Workers Union of America,* 406 Pa. 370, 178 A.2d 560 (1962), the

supreme court made the following pertinent remarks regarding the authority of an arbitrator:

[T]he power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not included therein, *or validly determine the dispute if they violate or act inconsistently with the terms of the submission.* To put it another way, their powers, being derived from submission, are measured by it.

*Id.*, 406 Pa. at 374, 178 A.2d at 561. (Emphasis added and citation omitted). It was also stated in *Sley* that "[t]he scope of matters submitted to arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." *Id.*, 406 Pa. at 374, 178 A.2d at 561–562. Ascertaining the intention of the parties to the instant case requires a careful analysis of the arbitration agreement as modified by the stipulation.

Originally, the arbitration clause empowered either party to submit "any dispute between [them] under this agreement" to arbitration. This power was not affected by the stipulation. The stipulation modified[1] this clause with the following language: "[w]e both agreed as counsel and the parties agreed that no mention of settlement was to be made to the arbitrator; and in the event that one of the parties broach the subject [of settlement] to the arbitrator without the knowledge of the other party, ... the arbitrator shall immediately discontinue the hearing...." The effect of this language was to condition the continued vitality of the otherwise proper arbitration hearing upon the nonoccurrence of the event specified therein.

Both parties have highlighted different portions of the language quoted above in support of their respective positions. Appellee emphasized the language that "no mention of settlement was to be made to the arbitrator...." Appellant, however, focuses attention on the following language

---

1. By their mutual agreement to the stipulation, the parties amended the original arbitration clause. *See* 11 Standard Pennsylvania Practice ch. 49 § 29.

in the stipulation: "... in the event that one of the parties broach the subject [of settlement] to the arbitrator...." It is evident from the parties' positions as to the stipulation that a problem of interpretation exists.

It is axiomatic in contract law that a court, in resolving problems of interpretation similar to the instant one, must ascertain the intent of the parties. The intent of the parties to a written agreement is regarded as embodied within the writing itself. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982). The agreement should be read in its entirety, giving effect to all of its provisions. The language therein should be accorded its "plain meaning." Applying these principles, we believe the intent of the parties manifested in the stipulation is that no party was to discuss the settlement efforts in this case with the arbitrator without the other party being aware of the discussion. To adopt appellee's interpretation would fail to give any effect to language emphasized by appellant. Furthermore, the requirement of lack of knowledge in the language appellant emphasized was intended by the parties to refer to the lack of awareness by the opposing party of the discussion, not the lack of prior knowledge and consent by the opposing party. This interpretation of the word "knowledge" is in accord with its plain meaning. Webster's Third New International Dictionary (1966 ed.). Thus to trigger the stipulation, one party would have to discuss the settlement negotiations in this case with the arbitrator unbeknownst to the opposing party. Clearly, that did not occur. Therefore, we conclude that no breach of the stipulation resulted from the colloquy between Mr. Roth of Sigma and the arbitrator.

More fundamentally, we believe the trial court *en banc* has misperceived the proper scope of review to be applied to the controversy regarding the stipulation in the instant case. The gist of the instant controversy is whether the arbitrator exceeded the scope of his authority, as measured by the above-quoted language of the stipulation, when he refused to adjourn the arbitration hearing and thereafter

rendered an award. The function of a reviewing court is first to determine the extent of the arbitrator's authority before it proceeds to determine whether in its judgment a violation of the terms of the stipulation occurred. It may well be that the court is without power to make such a judgment.

▇▇▇ Normally the arbitrator has the authority to decide all matters necessary to dispose of the claim, once it has determined that the substantive dispute is arbitrable. It is settled law in Pennsylvania that "unless restricted by the submission, the arbitrators are the final judges of both law and fact and their award will not be disturbed for mistake of either." *Sley, supra,* 406 Pa. at 374, 178 A.2d at 561. *See also Kardon v. Portare,* 466 Pa. 306, 353 A.2d 368 (1976) (all procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator). Although no Pennsylvania case discusses the proper treatment of instances where the parties have conditioned the continued vitality of the arbitration hearing on the nonoccurrence of a particular event, we discern no reason to regard the stipulation entered into by the parties instantly as outside of the normal authority of the arbitrator. It simply is another question of fact and law for the arbitrator to resolve.

▇▇▇ The parties, by their mutual agreement, have the ability to structure in advance of the hearing the arbitrator's authority. In absence of some limitation specified by the parties, the arbitrator has the authority to decide all matters necessary to dispose of the disputed claim subject to arbitration. The stipulation of the parties in the instant case did not expressly restrict the arbitrator from resolving any dispute as to its applicability. On the contrary, as appellant correctly points out, the arbitration clause was still broad in scope after the stipulation was adopted, since it permitted any dispute as to the agreement between the parties to be decided by the arbitrator. Absent the expression of a restriction by the parties, a court may not impose one *sua sponte. See Kardon, supra.* Thus, we cannot say

that the submission was restricted by the parties in such a manner as to have withdrawn the decision of any dispute regarding this stipulation from the normal range of the arbitrator's authority.

In its brief appellee contends that any dispute over this stipulation was not intended by the parties to be resolved by the arbitrator. Appellee cites *Hunn v. Pennsylvania Institute for the Blind,* 221 Pa. 403, 70 A. 812 (1908), in support of this contention. *Hunn* involved the issue of whether a court's evidentiary ruling that certain testimony was inadmissible was error. By the terms of a construction contract, the architects were made the arbiters of questions between the parties, and also it was their duty to certify when the project was finally completed thereby triggering the final payment on the contract. The excluded evidence related to the failure of the architects in their duties under the contract. It was excluded because the evidence failed to show that the matters discussed in the testimony had been submitted to arbitration. The court reversed the ruling holding that the arbitration clause referred to disputes between the contractor and the owners, and not questions that concern the performance of duties by the architects themselves. It concluded that the parties did not intend to permit the architects as arbitrators to pass upon and finally determine questions involving their own failure in the performance of duties, thus submission to arbitration was unnecessary.

In the instant case the arbitrator was not required to pass upon his own failure with respect to any duty imposed upon him by the stipulation. The stipulation did not obligate the arbitrator to refrain from inquiring as to settlement efforts; nor did it oblige the arbitrator to determine whether his judgment had been prejudiced by its breach in order for it to become operative. Arguably, the only obligation it imposed upon the arbitrator was to discontinue the hearing upon the occurrence of a specified event. It was the province of the arbitrator to decide if one of the parties breached the stipulation. In doing so, he was not required to pass upon his own failure to perform a duty imposed

upon him by the stipulation. Appellee's reliance upon *Hunn* is misplaced.

Mindful of the power of this court to determine whether the arbitrator has stayed within the authority given him by the submission, *see Sley, supra,* we must conclude that the arbitrator did not exceed his authority, for the stipulation did not manifest the parties' intention that the arbitrator should have no authority to resolve a dispute as to its applicability.

 Since the arbitrator was well within the bounds of his authority when he continued the hearing upon finding as fact that the agreement was not breached, the trial court *en banc* exceeded the proper scope of review when it found a violation of the stipulation. A mistake in the findings of fact and law in a common law arbitration is not subject to review on appeal. *Runewicz v. Keystone Insurance Co.,* 476 Pa. 456, 383 A.2d 189 (1978). It was error for the trial court *en banc* to find a violation of the stipulation.

 Inasmuch as the arbitrator did not exceed the scope of the submission, the only remaining avenue of review of the award for appellee is to show by clear, precise, and indubitable evidence that the parties were denied a hearing or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable, and unconscionable award.[2] *See Newspaper Guild, etc. v. Philadelphia Daily News, Inc.,* 401 Pa. 337, 164 A.2d 215 (1960). *See also* 42 Pa.C.S.A. § 7341. In this regard appellee, seemingly as an afterthought, argues that it was denied a hearing because it was unable to present testimony regarding the alleged violation of the stipulation. Upon reviewing the record, we have not found a request by appellee to present such evidence, nor have we found that the arbitrator denied any offer of such evidence by appellee.

2. In the summary of argument in appellee's brief, appellee argues that one of the commercial arbitration rules had been violated, thereby constituting misconduct and other irregularity of such a nature as to cause the award to be inequitable. This argument is not carried forward in the brief, so it will not be considered.

Not having proffered such evidence, appellee cannot now claim that it was denied a fair hearing. *See Runewicz, supra,* 476 Pa. at 462, 383 A.2d at 192. Furthermore, we fail to see the necessity to present testimony to establish the surrounding circumstances of the alleged breach, when the arbitrator and both counsel witnessed the event. Additionally, we note that appellee availed itself of the opportunity to argue the merits of its objection at length, before the arbitrator ruled. We conclude that no merit exists in appellee's contention.

For the foregoing reasons, we reverse the order vacating and setting aside the arbitrator's award of February 2, 1981 and remand for the entry of an order and judgment consistent with this opinion. We relinquish jurisdiction.

McEWEN, J., files a dissenting opinion.

McEWEN, Judge, dissenting:

While the opinion of the majority reflects a careful analysis and presents its holding in quite persuasive fashion, I must, nonetheless, very respectfully dissent. I share the following views expressed in the able opinion of the distinguished court *en banc,* specifically the learned Judges James T. Walsh and S. John Cottone:

It is not disputed that the controversy at issue was intended by both parties to be subject to arbitration. However, upon a breach of an expressed condition, both parties agreed that the arbitration would terminate and the matter would be reassigned. This modification of the agreement to arbitrate was neither invalid nor contrary to law.

It is the opinion of this court that the colloquy between the arbitrator and Mr. Roth for respondent on September 29, 1980, was in direct contradiction of the agreement of January 22, 1980. No matter how innocuous the remarks may have been, and despite the arbitrator's claim that he would not be biased because of those statements, the statement by Mr. Roth violated the stipulation to refrain from any mention of settlement negotiations posited by respondent's counsel and agreed to by the petitioner.

The record makes clear and the majority acknowledges that Mr. Roth, an officer of Sigma and an attorney who was present at the time that counsel for the parties entered into the stipulation, responded, despite the terms of the stipulation, that a reasonable sum and offer had not been made.

There can be little question but that the response of this officer of Sigma to the arbitrator could only mean that Giant had not made any reasonable offer of cash settlement, from which the arbitrator could infer only that it was Giant upon which the onus for resolution of the dispute rested. It would be difficult to accept that the response was mere oversight since it was provided by an individual who was an officer of Sigma, an attorney, and a party present at the time the stipulation was proposed by counsel for Sigma.

I would, therefore, affirm the order of the Common Pleas Court vacating the award and directing the parties to resubmit the matter to arbitration after a new arbitrator has been selected.