In re JOSEPH B. DAHLKEMPER CO., INC., Debtor.

JOSEPH B. DAHLKEMPER CO., INC., Movant,

v.

Victor LIBERATORE, individually and doing business as TERRA ERIE ASSOCIATES, Respondent.

Bankruptcy No. 93–10014–BM. Motion No. 94–8M.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 15, 1994.

Lawrence C. Bolla, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA, for movant/debtor.

Robert R. Goods, Cohen & Lombardo, P.C., Buffalo, NY, for respondent.

Norman E. Gilkey, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, PA, for Committee of Unsecured Creditors.

Kathleen Robb–Singer, Office of U.S. Trustee, Pittsburgh, PA.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor has objected to an amended proof of claim submitted after the bar date by Victor Liberatore, d/b/a Terra Erie Associates (hereinafter "Terra"). According to debtor, Terra's claim should be disallowed because it is time-barred and because the amounts sought by Terra are not provided for by the terms of a lease agreement between the parties.

Terra denies that its claim is time-barred and asserts that the amounts sought either are mandated by the provisions of the lease agreement or by the terms it imposed upon debtor during its holdover tenancy.

The claim will be allowed in its entirety for reasons set forth below.

### I

### FACTS

Debtor is in the business of selling jewelry and so-called "hard goods" to the general public through retail outlets located in Erie, Pennsylvania, and vicinity.

Terra is a partnership. Its place of business is in Blasdell, New York.

On March 17, 1977, debtor and Eastway Plaza, Inc. executed an agreement whereby debtor leased retail space in Eastway Plaza from Eastway.

Paragraph 3 of the agreement provided that the lease was for a term of ten (10) years.

Paragraph 45 granted debtor an option to renew the lease for one additional 10–year term by notifying Eastway in writing of its intention to do so within a specified period of time prior to the expiration of the initial lease term.

If debtor elected to exercise its option, paragraph 33 of the lease provided for an upward adjustment in the annual rental and common area maintenance charges based upon the Consumer Price Index ("CPI").

Paragraph 17 of the lease agreement provided as follows:

> If the Tenant shall remain in possession of all or any part of the demised premises after the expiration of the terms of this lease or any renewal thereof, then the Tenant shall be deemed a tenant of the demised premises from month to month at

the same rental and subject to all of the terms and provisions hereof, except only as to the term of this lease.

Debtor and Eastway subsequently executed an extension and amendment of the above lease on January 10, 1983.

Paragraph 1 modified paragraph 45 of the original lease by replacing the single 10–year renewal option with two 5–year renewal options.

In paragraph 2, debtor exercised its first 5–year renewal option, thereby extending the lease until September 30, 1992.

Paragraph 3 deleted paragraph 33 of the original lease and replaced it with a new provision, which provided in relevant parts as follows:

(a) There shall be an adjustment in the annual Minimum Rent and annual Common Area Maintenance Charge payable, effective October 1, 1987, based upon the percentage increase (if any) between the Base Index and the Price Index for the month of September, 1987 . . . .

(d) There shall be an adjustment in the annual Minimum Rent and the annual Common Area Maintenance Charge payable commencing the first day of Tenant's option period, if exercised (October 1, 1992), based upon the percentage increase (if any) between the Base Index and the Price Index for the month of September, 1992 . . . .

The monthly rental due during this term of the lease was $10,286.12.

Eastway subsequently assigned its interest in the lease to Champ Development Corporation on December 30, 1983, which in turn assigned its interest therein to Terra on June 16, 1984.

On October 15, 1987, debtor and Terra executed a lease agreement wherein paragraph 21 of the original lease (pertaining to insurance) was modified. Paragraph 2 of this amendment provided that, except for the modification of paragraph 21, all of the terms and provisions of the lease dated March 17, 1977 and the amendment dated January 10, 1983, "shall remain in full force and effect and are hereby adopted and reaffirmed by the parties hereto".

Prior to the expiration of the first 5–year renewal, debtor and Terra had negotiations concerning whether debtor would exercise its second 5–year option. Debtor was experiencing severe financial problems and sought a reduction in the rental rate of some twenty-five percent (25%). Negotiations broke down when Terra refused to agree to a reduced rental rate.

Debtor did not notify Terra of its intention to exercise its option to renew the lease for another 5–year term. It continued, however, to occupy the leasehold premises until May 3, 1994. According to debtor's president, debtor was deliberately "passive" in this regard because it sought to become a holdover tenant and to avoid paying increased rents and common area maintenance charges.

On October 21, 1992, approximately three weeks after the initial renewal term had expired, Terra sent a letter to debtor asserting that, as of October 1, 1992, the annual rental and common area maintenance charge would increase in accordance with paragraph 33, as amended, of the lease agreement.

Debtor refused to pay the increased rates demanded by Terra and instead continued, with one minor exception, paying on a monthly basis at rates in effect during the initial 5–year renewal period. All monthly payments were sent to Terra, which promptly cashed the checks, at its place of business in Blasdell, New York.

On January 7, 1993, debtor filed a voluntary chapter 11 petition. Schedule F, Creditors Holding Unsecured Nonpriority Claims, listed Terra as having a contingent claim in the amount of $1.00. Terra's address on the schedule was listed as: Three Gateway Center, Pittsburgh, Pennsylvania, 15222, the address of Terra's predecessor-in-interest.

Shortly after debtor filed for bankruptcy, a bar date of July 1, 1993 was established for the filing of proofs of claim.

Notice of the bankruptcy filing and of the bar date was mailed by the clerk of court to all creditors of record.

Terra did **not** receive formal notice of debtor's bankruptcy filing or of the bar date for filing proofs of claim. Both notices were sent to the address of Terra's predecessor-in-interest and were not forwarded to it in Blasdell, New York. Terra was, however, informally notified in early-January of 1993 that debtor had filed a chapter 11 petition during on-going discussions concerning debtor's possible renewal of the lease for a second 5–year term.

Terra did **not** file a proof of claim on or prior to the bar date of July 1, 1993.

Debtor's chapter 11 plan of reorganization was confirmed on November 22, 1993.

On February 17, 1994, several months after its plan had been confirmed, debtor filed a motion for leave to file a proof of claim in the amount of $41,413.89 on Terra's behalf. Attached to the motion was debtor's objection to the proof of claim.

An order of court was entered on April 5, 1994 granting Terra leave to file its own proof of claim within fourteen (14) days and determining that debtor would be considered a month-to-month tenant as of October 1, 1992.

On April 16, 1994, Terra filed a proof of claim on its own behalf in the amount of $82,356.07 for pre-petition and post-petition unpaid rentals and common area maintenance charges.

On May 21, 1994, debtor objected on several grounds to the proof of claim filed by Terra. According to debtor:

(1) that portion of Terra's proof of claim for unpaid pre-petition rents and common area maintenance charges was submitted long after the bar date of July 1, 1993 and therefore is time-barred;

(2) as a holdover tenant, debtor paid all rentals due and owing to Terra in accordance with paragraph 17 of the lease agreement;

(3) this court lacks jurisdiction to adjudicate that portion of Terra's claim for post-petition rents and common area maintenance charges which accrued after plan confirmation on November 22, 1993.

On June 21, 1994, Terra filed an amended proof of claim in which it conceded debtor's contention that this court lacked jurisdiction to adjudicate any claim it may have for unpaid post-confirmation rentals and common area maintenance charges. In its amended proof of claim, Terra seeks the sum of $8,124.26 as a pre-petition general unsecured claim and the sum of $47,687.44 as a post-petition, pre-confirmation administrative priority claim. The amounts claimed by Terra are based on the cost of living adjustment provided for by paragraph 33 of the lease agreement, as amended.

An evidentiary hearing on Terra's amended proof of claim and debtor's objections thereto was conducted on July 18, 1994. Both sides were given an opportunity to present testimony and other evidence on the issues before the court.

## II

### ANALYSIS

Debtor has objected to Terra's proof of claim on the following grounds.

According to debtor, paragraph 17 of the lease agreement provided that debtor, as a holdover tenant, was obligated to pay only "the same rental" as it had paid during the initial 5–year renewal term. Debtor asserts that the cost-of-living adjustment provided for in paragraph 33 of the lease does **not** apply to its holdover tenancy starting on October 1, 1992 because debtor had not exercised its option to renew for a second 5–year term.

Also, debtor argues that the pre-petition portion of Terra's claim is time-barred because it was filed long after the prescribed bar date for filing proofs of claim.

Terra insists that its proof of claim should be allowed in its entirety.

Terra notes that paragraph 17 of the lease agreement expressly provides that debtor, as a holdover tenant, was "subject to all of the terms and provisions" of the lease, except for its term. Paragraph 33, which provides for a cost-of-living adjustment, is one of those terms and provisions and therefore is implicated.

Even if paragraph 33 was not implicated by virtue of paragraph 17, Terra further argues, the letter of October 21, 1992 stating that Terra nonetheless was implementing the cost-of-living adjustment obligated debtor to pay the increased rate.

Also, Terra argues that its claim is not time-barred because it did not receive formal notice of debtor's bankruptcy filing or of the bar date prior to July 1, 1993.

Several issues have been raised by the parties and must be addressed.

The first issue is whether paragraph 17 of the lease agreement obligated debtor to pay additional rents and common area maintenance charges in accordance with paragraph 33 during its holdover tenancy.

The second issue is whether Terra's letter of October 21, 1992 stating it was increasing the monthly rental pursuant to paragraph 17 effectively obligated debtor to pay that additional rate during its holdover tenancy.

The third issue is whether any portion of Terra's proof of claim is time-barred because it was not filed until some nine (9) months after the bar date had passed.

## FIRST ISSUE.

Resolution of the first issue requires interpretation of the complex clause "at the same rental and subject to all of the terms and provisions hereof, except only as to the term of this lease", which appears in paragraph 17 of the lease. As has been indicated, debtor relies on the phrase "at the same rental" whereas Terra relies on the coordinate phrase "subject to all the terms and provisions hereof".

■ A lease is a contract and is to be interpreted according to the principles of contract law. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 200, 519 A.2d 385, 389 (1986). This principle applies to landlord-tenant disputes concerning leases. *Rittenhouse v. Barclay White, Inc.*, 425 Pa.Super. 501, 507, 625 A.2d 1208, 1211 (1993).

■ The intention of the parties is a paramount consideration in interpreting a contract. *Hutchison*, 513 Pa. at 200, 519 A.2d at 389. When the terms and conditions of the contract are clear and unambiguous,

their intention may be ascertained from the document itself. *Id.*

■ A contract is ambiguous when it is reasonably susceptible of different constructions and is capable of being understood in more than one way. *Id.*

■ The court must, when construing a contract, consider the agreement as a whole. *Giant Markets, Inc. v. Sigma Marketing Systems, Inc.*, 313 Pa.Super. 115, 122, 459 A.2d 765, 769 (1983). The entire contract must be taken into account when the meaning of an individual clause is at issue. *Neal D. Ivey Co. v. Franklin Assocs., Inc.*, 370 Pa. 225, 231–32, 87 A.2d 236, 239 (1952).

■ Careful examination of the language of paragraphs 17 and 33 of the lease indicates that paragraph 17 did **not** implicate paragraph 33 and that debtor therefore was **not** obligated by the language of that provision to pay increased rents and common area maintenance charges during its holdover tenancy. The language of the two paragraphs is clear and unambiguous in this regard.

It is undisputed that debtor was a holdover tenant subsequent to September 30, 1992.

Paragraph 17 provided that **if** debtor held over after the expiration of any renewal term of the lease, then it became a month-to-month tenant "at the same rental and subject to all of the terms and conditions hereof, except only as to the term of this lease".

Terra's reliance upon the phrase "subject to all the terms and conditions hereof" is misplaced. Careful review of the language of paragraph 33 reveals that it was **not** one of the "terms and conditions" referred to therein.

■ Subsection (a) of paragraph 33 did not obligate debtor to pay an increased rate during its holdover tenancy. It merely provides that there shall be an upward adjustment in the rate, **effective October 1, 1987,** based on the percentage increase between the base price and the CPI for September of 1987. By its very terms, this provision applied only to the rate during the first renewal period. Moreover, even if it did apply to debtor's holdover tenancy, it only would re-

quire debtor to pay at the rate in effect during the first renewal term, which debtor did during its holdover tenancy.

■ Subsection (d) of paragraph 33 also did not obligate debtor to pay an increased rate during the holdover tenancy. It merely provided that **if** debtor exercised its option to renew for the second 5–year term beginning October 1, 1992 ("if exercised, (October 1, 1992)"), then the effective rate would be adjusted based on the percentage increase between the Base Index and CPI for September of 1992 ("based upon the percentage increase (if any) between the Base Index and the Price Index for the month of September, 1992"). In other words, an increase pursuant to subsection (d) was conditioned upon debtor exercising its option to renew for the second 5–year term. This condition was not met in this instance. It is undisputed that debtor never exercised this option.

The phrase "subject to all the terms and provisions hereof" is not all-encompassing. It does not include paragraph 33 or its subparts in this instance. Moreover, if it did include paragraph 33(d), paragraph 17 would obligate debtor to pay the same rental while also obligating it to pay an increased rental during the same time period. The analysis of paragraph 33(d) indicates, however, that no such strained and inconsistent outcome is required. The precondition for paragraph 33(d) was not satisfied in this instance.

Terra's interpretation of paragraph 17 and its insistence that paragraph 33 is thereby implicated would have to be rejected even if paragraphs 17 and 33 were ambiguous (which they are not). As has been indicated, our ultimate objective when construing the lease agreement is to determine the intention of the parties who executed it and the subsequent amendment to paragraph 33.

■ Terra, as the claimant, has the ultimate of persuasion with regard to its claim. *See In re Allegheny International, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992).

Terra offered no extrinsic evidence in support of its position that the parties who drafted and executed the lease agreement and the amendment to paragraph 33 intended that debtor would pay an increased rate during any holdover tenancy. The only witnesses who testified on Terra's behalf were not involved in the drafting and execution of the original lease in March of 1977 or the amendment to paragraph 33 in January of 1983. They entered the picture well after these documents had been drafted and executed and had no first-hand knowledge of what debtor and Eastway Plaza, Inc. intended with respect to these provisions.

On the other hand, debtor, whose principals were a party to the drafting of the lease, offered testimony of a contrary intent. Based upon the evidence received we determine that the parties intended that paragraph 17 did not call paragraph 33 into play in the event of a holdover tenancy.

### *SECOND ISSUE.*

Terra fares better with regard to the second issue than it did on the first.

As has been indicated, it is undisputed that debtor was a holdover tenant on a month-to-month basis from October 1, 1992 until it vacated the leasehold premises on May 3, 1994.

■ As a general matter, when a tenant-in-possession under a lease continues as a holdover tenant, Pennsylvania law implies a new lease on the same terms and subject to the same covenants and conditions as those contained in the expired lease. *Reading Terminal Merchants Association v. Rappaport Associates,* 310 Pa.Super. 165, 174, 456 A.2d 552, 556 (1983); *also Clairton Corp. v. Geo–Con, Inc.,* 431 Pa.Super. 34, 35–37, 635 A.2d 1058, 1059 (1993).

■ Like virtually every legal principle, the above general rule has its exceptions. For instance, if the holdover tenant continues in possession after receiving notice from the landlord of a change in the terms of the lease, the holding over is construed as acceptance by the tenant of the new terms. *Id.* (*citing Worrell v. Rosenberry,* 74 Pa.Super. 152 (1920)). If the lessor gives written notice of intent to change the terms and the lessee does not give notice of intent to vacate, the lessee is subject to the terms and conditions of the notice. *Id.* (*citing Diamond v. Drucker,* 177 Pa.Super. 226, 110 A.2d 820 (1955).

The rationale for this exception to the above general principle is as follows:

> Were it otherwise, lessees could hold lessors hostage by the simple expedient of remaining in possession, thus effectively preventing landlords from modifying any terms of a lease for an indefinite period of time. Tenants would be legally able to obtain a perpetual lease on the former terms, subject only to the landlord's right to bring an action in ejectment.

*Reading Terminal Merchants Ass'n,* 310 Pa.Super. at 174, 456 A.2d at 556.

 The letter of October 21, 1992 from Terra to debtor stating that the rates would be increased as of October in accordance with the cost-of-living adjustment set forth in paragraph 33 of the expired lease constitutes notice to debtor of a change in the terms of the holdover tenancy.

According to its president, debtor was "passive" when Terra approached it about exercising its option for the second 5–year renewal in hopes of "locking in" the previous rate. Debtor was too clever for its own good. Rather than "locking in" the rates in effect during the first renewal term, debtor obligated itself to pay a higher rate. It remained in possession of the leasehold premises after receiving the letter and continued paying rent, albeit at the old rate, and thereby accepted the new terms and became subject to them.

The amount of increased unpaid rents and common area maintenance charges due and owing from October 1, 1992 until the filing of the bankruptcy petition is $8,124.26. The amount of increased unpaid rents and common area maintenance charges due and owing from the filing of the petition until plan confirmation on November 22, 1993 is $47,687.44. The total amount due and owing is $55,881.70.[1]

Terra's claim will be allowed in these amounts.

*THIRD ISSUE.*

One final matter remains to be discussed. In its objection to Terra's proof of claim, debtor asserts that the portion of Terra's claim for pre-petition rents and common area maintenance charges is time-barred because it was filed long after the bar date of July 1, 1993.

Debtor did not pursue this particular issue in its post-trial brief, perhaps because it has abandoned it. We will briefly address this objection out of an abundance of caution and determine whether it has any merit.

As has been indicated, Terra did not receive formal notice of debtor's chapter 11 filing or of the bar date for filing a proof of claim because debtor erroneously listed Terra's address as Three Gateway Plaza, Pittsburgh, Pennsylvania, when its correct address is 3950 McKinley Parkway, Blasdell, New York. The notices were sent by the clerk of this court to the place of business of Terra's predecessor-in-interest and were not forwarded to it.

 However, although Terra never received formal notice of debtor's chapter 11 filing, it did have actual knowledge thereof. Terra was "informally" notified in January of 1993 that debtor had filed during on-going discussions concerning renewal or renegotiation of the above lease. Terra did not, however, take any steps on its own to obtain a copy of the bankruptcy petition or to ascertain the bar date for filing a proof of claim.

The fact that Terra had actual knowledge of the bankruptcy filing but did not take steps to ensure that it filed a proof of claim prior to the bar date does not bar its claim for pre-petition rents and common area maintenance charges.

It was the law under the Bankruptcy Act, the predecessor to the present Bankruptcy Code, that the discharge provision of the Act did not operate to bar the claim of a creditor who never received formal notice of the date

---

1. Terra's amended proof of claim includes an increased rate for all of October of 1992. Question could be raised whether Terra is entitled to the increased rate as of November 1, 1992 rather than October 1, 1992. To hold that the increase became effective as of October 1, 1992 implies

that Terra's letter dated October 21, 1992 should be given *nunc pro tunc* effect as of October 1, 1992. We shall **not** recalculate the amount to which Terra is entitled, as the parties have not provided any basis for so doing.

for submitting a claim. *See City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). A creditor in a bankruptcy case had every right to assume that all notices to which it was entitled under the Act would be sent to it. *See In re Harbor Tank Storage*, 385 F.2d 111, 115 (3d Cir.1967). Accordingly, the fact that the creditor may have been generally aware of the pending reorganization proceeding did not thereby impose upon that creditor an affirmative duty to intervene in the case and submit a claim. *See In re Intaco Puerto Rico, Inc.*, 494 F.2d 94, 99 (1st Cir. 1974).

Replacement of the Bankruptcy Act with the Bankruptcy Code has not resulted in a change in the case law in this regard.

Federal Rule of Bankruptcy Procedure 2002(a)(8) provides in relevant part as follows:

> Except as provided in subdivisions (h), (i), and (*l*) of this rule, the clerk, or some other person as the clerk may direct, shall give ... all creditors ... not less than 20 days notice by mail of ... the time fixed for filing proofs of claim pursuant to Rule 3003(c). ...

Courts that have been called upon to apply the Code have adhered to the decisional law under the Act. They are in agreement that the holding in *City of New York* is not grounded in objectives unique to the Act.

 For instance, the notice prescribed by Rule 2002(a)(8) also is required by due process, even when the creditor has actual knowledge of the bankruptcy proceeding. *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386 (10th Cir.1987).

Also, it has been held that claims of creditors who were known to debtor and who had actual knowledge of the chapter 11 proceeding, but who did not receive the required notice of the bar date, were not discharged upon plan confirmation. *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 834–35 (11th Cir. 1989).

This holding has logically (and appropriately) been extended to situations where a debtor argues that a tardy proof of claim is time-barred and may not even be considered.

*In re Uiterwyk*, 105 B.R. 103, 105 (Bankr. M.D.Fla.1989).

 Actual knowledge of the bankruptcy proceeding does not impose a duty upon the creditor to inquire about the bar date for filing a proof of claim. The responsibility does not lie with creditors or claimants to search out what is required procedurally of them in this regard. The bankruptcy rules provide them with a right to appropriate and effective notice. *In re Spring Valley Farms*, 85 B.R. 593, 595 (N.D.Ala.1988), *aff'd* 863 F.2d 832 (11th Cir.1989).

In light of the foregoing, it must be concluded that no portion of Terra's proof of claim is time-barred.

An appropriate order shall be issued.

### *ORDER OF COURT*

AND NOW at Pittsburgh this 15th day of August, 1994, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that the amended proof of claim by Victor Liberatore, individually and d/b/a Terra Erie Associates, is **ALLOWED** in its entirety.