J-A17045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CAROLINE MARTIN D/B/A CAROLINE MARTIN EVENTING, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1827 EDA 2023 |
| JEANNE SHIGO AND ROBERT FERRIER | : | |

Appeal from the Order Entered June 20, 2023
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2019-04003

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED OCTOBER 03, 2024**

Caroline Martin d/b/a Caroline Martin Eventing, LLC ("Martin") appeals from the trial court's order denying her petition to vacate a common law arbitration award. We affirm, deny Appellee[1] Jeanne Shigo's ("Appellee") motion to quash the appeal, grant Appellee's oral motion for counsel fees, and remand for the determination and imposition of said fees.

We take the underlying facts and procedural history in this matter from the trial court's opinion.

> The instant action was commenced by complaint [in May 2019]. [Martin] sought relief for breach of contract, unjust enrichment and [] relief in the form of money damages. [Martin] alleged that Appellee[] breached a contractual agreement relating to the purchase and ownership of a horse. [Martin] is a

_____

[1] Defendant below, Robert Ferrier, is not a party to the instant appeal.

"professional horse woman" who trains and shows horses in various equestrian activities.

Appellee [] is a family friend of [Martin]. [Martin] and [Appellee] entered into an agreement to purchase and train a horse, Ferrie's Cello (hereinafter ["Eddy"]).[2] [Martin] alleged that the parties entered into an [unsigned] agreement [("the unsigned agreement")] for joint ownership of [Eddy].

[Martin] averred that the parties performed their duties pursuant to [the] unsigned agreement regarding the boarding, maintenance and training of [Eddy] from July 2017 until September 2018. [Eddy] was housed in [Martin's] facilities in Florida and Riegelsville, Bucks County, Pennsylvania. [Martin] further alleged that Appellee [] came to the Bucks County facility in September 2018 and moved [Eddy] to an undisclosed location outside of [Martin's] control.

Pursuant to a stipulated order, the parties agreed to move the matter to arbitration as contemplated by [a provision in the unsigned] agreement []. Arbitration commenced through the issuance of a preliminary decision by arbitrator Elizabeth O'Connor Tomlinson (hereinafter "the arbitrator"), [in November 2020]. The preliminary decision outlined the claims to be addressed in the arbitration. After a briefing schedule and submissions by both parties, a hearing was held before the arbitrator [in May 2021]. Subsequent submissions were filed [in August 2021] and an initial decision was rendered [in April 2022]. [In September 2022], a final award was issued[, which denied Martin's claim for ownership of Eddy as not properly before the arbitrator, awarded her damages in the amount of $12,588.16, and attorney's fees in the amount of $27,059.00].

[Martin] filed a petition to vacate arbitration award [in October 2022]. Appellee [] filed a response to the petition [in December 2022]. [The trial court] held oral argument on the merits of the petition [in June 2023]. [The trial court] entered an order denying [Martin's] petition and upholding the arbitration

_____

[2] The parties nicknamed the horse Eddy. *See* Complaint, 5/29/19, at 1 (unnumbered).

award [in June 2023]. [Martin] filed a [timely notice of appeal. Martin and the trial court complied with Pa.R.A.P. 1925].

Trial Court Opinion, 9/13/23, at 1-2 (capitalization regularized and footnotes omitted).

Martin raises four issues for our review:

1. Whether the trial court erred in confirming the arbitration award, when the arbitrator exceeded her powers by refusing to recognize and apply the terms and conditions of the controlling [unsigned agreement] that both established the 50/50 ownership of [Eddy] and set forth specific remedies for breach/termination of the shared ownership of [Eddy?]

2. Whether the trial court erred in confirming the arbitration award, when the arbitrator summarily dismissed [Martin's] claim to 50% ownership of [Eddy], even after Appellee had admitted the dispute involving ownership of [Eddy] was controlled by the terms in the [unsigned agreement] and instead created her own contractual relationship and set of remedies available to [Martin?]

3. Whether the trial court erred in refusing to vacate the arbitration award, where, under the remedy for awarding damages created by the arbitrator, the arbitrator held each payment made by [Martin] as required under the [unsigned agreement], [and] created an accrued right of action that was subject to bar under the [unsigned agreement's] one year look[-]back provision[?]

4. Whether the trial court erred in refusing to vacate the arbitration award, where the arbitrator both referenced the settlement offer by Appellee to pay $23,521.41 in [its] findings of fact and imposed that amount as the maximum recovery [Martin] could seek for Appellee's breach, conduct prohibited by Pennsylvania Rule of Evidence 408[?]

Martin's Brief at 4-5 (capitalization and punctuation regularized).

J-A17045-24

This Court employs a very limited standard of review in appeals from trial court orders confirming an arbitration award:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to (statutory arbitration) or to a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law.

*U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874, 876-77 (Pa. Super. 2006) (citations, quotation marks, and brackets omitted); *see also Roccograndi v. Martin*, 214 A.3d 251, 256 (Pa. Super. 2019) (stating "[t]he standard of review in arbitration confirmation cases is whether, in interpreting the award, the trial court exceeded its scope of authority by an abuse of discretion or error of law.").

An arbitrator's power is determined by the agreement of the parties. *See Giant Markets Inc. v. Sigma Marketing Systems, Inc.*, 459 A.2d 765, 768 (Pa. Super. 1983). With respect to a claim of an irregularity or failure to provide a full and fair hearing, "[t]he appellant bears the burden to establish both the underlying irregularity and the resulting inequity by clear, precise, and indubitable evidence." *Toll Naval Associates v. Chun-Fang Hsu*, 85 A.3d 521, 525 (Pa. Super. 2014) (citation omitted). Moreover,

- 4 -

irregularity refers to the process employed in reaching the result of the arbitration, not the result itself. A cognizable irregularity may appear in the conduct of either the arbitrators or the parties. Our Supreme Court has stated that the phrase "other irregularity" in the process employed imports "such bad faith, ignorance of the law and indifference to the justice of the result" as would cause a court to vacate an arbitration award.

*Id*. at 529 (citations omitted).

In her first two issues, Martin avers the arbitrator "exceeded her powers" by refusing to arbitrate the issue of the ownership of Eddy. *See* Martins' Brief at 25-34. Specifically, Martin claims the unsigned agreement called for 50/50 ownership of Eddy. *See id*. at 26. Martin contends the duty of an arbitrator is to address all claims which might arise under an agreement, regardless of whether the claims was raised in the complaint. *See id*. at 26-28. Thus, Martin argues, the arbitrator's conclusion that Martin was attempting to raise a new cause of action by asserting ownership of Eddy was an action in excess of her authority. *See id*. Moreover, Martin claims the ruling was incorrect because the arbitrator failed to cite supporting evidence to demonstrate Appellee was entitled to ownership of Eddy. *See id*. at 31-34.

The trial court disagreed. It noted the parties agreed to be bound by both the unsigned agreement and the claims in the complaint. *See* Trial Court Opinion, 9/13/23, at 7-8. The trial court stated the complaint did not request

- 5 -

relief related to the valuation of Eddy and, therefore, the ownership issue was not properly before the arbitrator. *See id*. at 8.

As this Court has stated, "the arbitrator's authority is restricted to the powers the parties have granted [her] in the arbitration agreement, [thus,] we may examine whether the common law arbitrator exceeded the scope of [her] authority." *Gargano v. Terminix Intern. Co., L.P.*, 784 A.2d 188, 193 (Pa. Super. 2001) (citations omitted). Martin "bears the burden of establishing the underlying irregularity and the resulting inequity by clear, precise and indubitable evidence." *Id*. at 195. Martin has not done so.

Martin filed a complaint in law, not equity. In that complaint, Martin never sought valuation of, or disputed the ownership of, Eddy. *See* Complaint, 5/29/19, at 2-7 (unnumbered). Instead, Martin sought reimbursement for the costs and expenses associated with Eddy's care between July 2017 and August 2018.[3] *See id*. at 7-8. Moreover, the complaint stated multiple variations on the following claim:

> The parties purchased [Eddy] under an oral agreement wherein [Appellee] would retain 50% ownership of [Eddy] and

---

[3] In an alternative relief section of the complaint, Martin suggested that if Appellee was unwilling to pay damages, Martin would seek physical possession or ownership of Eddy. *See* Complaint, 5/29/19, at 8 (unnumbered). However, seeking ownership of Eddy as alternative relief if Appellee did not compensate Martin is not the same as stating a cause of action for ownership, particularly, where, as discussed above, Martin conceded Appellee had the option, which she exercised, of taking full ownership of Eddy. *See id*. at 1-2 (unnumbered).

provide for 50% of all costs and expenses associated with [Eddy]. ***In the alternative, [Appellee] would retain 100% ownership of the horse and would pay to [Martin] the full amount of the monthly costs and expenses associated with [Eddy], including, but not limited to, maintenance, boarding, vetting, training[,] and competing.***

*Id*. at 1-2 (unnumbered) (emphasis added); ***see also id***. at 3 ¶16 (asserting "[Appellee] has now decided . . . she wants to take 100% ownership of [Eddy] but does not want to repay [Martin] for the full monthly costs of [Eddy] to [Martin]"); 4 ¶ 19(2)(3); 5¶ 21; 6 ¶24; 7 ¶28(3); and 8.

Martin disregards the above, arguing the parties agreed to arbitrate the ownership issue. ***See*** Martin's Brief at 25-30. Martin relies on the parties' joint petition to compel arbitration. ***See id***. However, nothing in the petition, filed in the trial court, set the parameters of the arbitration. ***See*** Joint Petition to Compel Arbitration, 7/16/19, at 1-3 (unnumbered). Martin cites to the first paragraph of the Joint Petition, which states, "[t]his is an action to determine the parties' rights to the ownership of . . . [Eddy]." ***Id***. at 1 (unnumbered). However, later in the same petition, the parties agree that this action is for damages only. ***See id***. at 2 (unnumbered). The trial court's order granting arbitration did not set forth the scope of arbitration and does not demonstrate the parties agreed to arbitrate ownership.

Martin also argues that because the unsigned agreement contained provisions discussing ownership of Eddy, the arbitrator was required to decide the issue even if it was not raised in the complaint. ***See*** Martin's Brief at

25-32. However, the assertion that the inclusion of any topic in an agreement compels its arbitration even if not raised by either party is untenable. The arbitration clause in the unsigned agreement very clearly states that "the dispute" is subject to binding arbitration. *See* Unsigned Agreement, 2017, at 3. Martin's complaint laid out what issue was in dispute, namely whether Martin was owed damages, and how much, for her care of Eddy. Martin could have sought ownership of Eddy in the complaint but did not. Martin could have sought to amend her complaint to seek ownership of Eddy, she did not.[4] She cannot now complain the arbitrator exceeded her authority by refusing to decide an issue that was not in dispute and thus not subject to arbitration. *See Gargano*, 784 A.2d at 193; *see also Roccograndi*, 214 A.3d at 256. Martin's first two issues do not merit relief.

In her third argument heading, Martin asserts "the arbitrator wrongfully imposed a reduction of damages . . . by applying a one[-]year accrual limitation that had no basis in fact or law[.]" Martin's Brief at 34 (bolding omitted). The remainder of Martin's argument on this issue is devoted to her

_____

[4] Martin appears to allege she sought permission from the arbitrator to amend her complaint to explicitly include a claim for ownership of Eddy and the arbitrator denied her motion. However, this assertion is not supported by the certified record. It is settled that documents not contained in the certified record do not exist for purposes of appeal. *See Daniel v. Wyeth Pharmaceuticals, Inc.*, 15 A.3d 909, 936 n.1 (Pa. Super. 2011) (Fitzgerald, J. concurring).

argument that the arbitrator misapplied the law. *See id*. at 34-38. Martin misapprehends the standards of review in an appeal from binding common law arbitration award. As we stated above, an arbitrator is "the final judge of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law." *U.S. Claims, Inc.*, 914 A.2d at 874, 876-77.

Here, the trial court cited the correct standard of review, then noted Martin "failed to establish that the arbitration process was irregular in any way. . . . [T]he arbitrator provided the parties with multiple opportunities to brief issues, conduct discovery, and present evidence before her and as such the arbitration did not constitute an unfair process as defined under Pennsylvania law." Trial Court Opinion, 9/13/23, 9. The record and law support the trial court's conclusion.

While Martin baldly states the arbitrator's conduct was "the poster child for 'irregularity' and 'unjust, inequitable or unconscionable award[,]'" *see* Martin's Brief at 38, she fails to explain this conclusion or differentiate her argument in any way from a claim that the arbitrator committed an error of law. *See Toll Naval Associates*, 85 A.3d at 525. Martin's third issue does not merit relief.

In her final claim, Martin argues the arbitrator committed both an irregularity and misconduct in referencing a settlement offer made by Appellee in her findings of fact and then awarding damages in that amount. ***See*** Martin's Brief at 39-42. Martin bases her argument on Pennsylvania Rule of Evidence 408(a) which provides that evidence of compromise offers and negotiations is not admissible ***at trial***.

In rejecting Martin's claim, the trial court relied upon this Court's decision in ***Andrew v. CUNA Brokerage Services, Inc.***, 976 A.2d 496 (Pa. Super. 2009). ***See*** Trial Court Opinion, 9/13/23, at 9. This Court stated:

> Arbitration, ***while not surrounded by the technical procedural safeguards incident to litigation***, is not a wholly informal process and requires for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy. These minimum standards require that both parties are provided with notice, all the arbitrators must sit at the hearing, each side is entitled to be heard and to be present when the other party's evidence is being given and, unless the submission allows a decision by a majority of the arbitrators, all must join in the award.

***Andrew***, 976 A.2d at 501 (citations and internal quotation marks omitted; emphasis added). We discern neither an error of law nor an abuse of discretion in its decision.

As with her third claim, Martin attempts to portray a claim the arbitrator committed an error of law as a claim of irregularity and misconduct. ***See*** Martin's Brief at 39-42. Martin does not point to any legal support for a claim that Pa.R.E. 408 applies to arbitration proceedings, let alone support for a

- 10 -

contention that an alleged violation of the Rule constitutes an irregularity or misconduct on the part of the arbitrator. ***See Andrew***, ***supra.*** (noting the more informal nature of arbitration proceedings). Moreover, none of the caselaw cited by Martin to support her claim of such a violation arises in the context of arbitration and Martin fails to argue the applicability of those cases to the instant matter. ***See*** Martin's Brief at 40-42. Thus, because Martin has not shown any irregularity or misconduct by the arbitrator, her final claim must fail.

For the reasons discussed above, Martin's issues do not merit relief. Accordingly, we affirm the denial of Martin's petition to vacate common law arbitration. We deny Appellee's motion to quash the appeal as moot. Because Appellee prevailed both at the trial court and on appeal, she is entitled to counsel fees pursuant to article 19 of the agreement. Therefore, we grant Appellee's oral motion for counsel fees, and remand for the determination and imposition of said fees.

Order affirmed. Motion to quash denied. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/3/2024